RUBY, Appellant, vs. FARMERS MUTUAL AUTOMOBILE IN-SURANCE COMPANY, Respondent.

*November 5—December 4, 1956.*

For the appellant there was a brief by *Homer J. Williams,* attorney, and *Lowry & Hunter* of counsel, all of Waukesha, and oral argument by *Mr. Williams* and *Mr. Richard Hunter.*

For the respondent there was a brief by *Hannan, Johnson & Goldschmidt,* attorneys, and *Herbert L. Wible* of counsel, all of Milwaukee, and oral argument by *Mr. Wible.*

BROWN, J.   Plaintiff acquired a ring containing one large and two small diamonds and procured a policy from defendant insuring him in the sum of $2,500 against loss through theft.  The policy contained the provision:

"Theft.—The word 'theft' includes larceny, burglary, and robbery.  Mysterious disappearance of any insured property shall be presumed to be due to theft."

Mr. Ruby owned and operated a farm and a dairy business. On May 14, 1952, he and one of his hired men worked in his barn repairing a trailer.  To conclude the repairs Mr. Ruby painted the trailer with creosote.  In doing so he got creosote on his hands and on the ring.  He left the barn where he was working and went to the dairy building where there was a washroom.  He testified that on this journey of some 60 feet between buildings he observed that the large diamond was in place in the ring and that it had creosote on it.  At the washroom Mr. Ruby removed the ring and placed it on the sill of a window which could not be opened.  He testified that the ring was tight and hard to remove and this required him to pull on the setting which held the large diamond. He did not recall, specifically, that he noticed the stone at this time but was sure that in taking off the ring he would have noticed its absence if it had been gone.  While he was washing his hands his daughter called to him that it was raining and a sick horse in the pasture was getting wet.  Mr. Ruby immediately ran out and got the horse into shelter, dried, and bedded it.  He then went into the house and had his supper, after which he returned to work in his carpenter shop.  While there he remembered that he had not replaced his ring on his finger and went to the washroom to get it.

It was on the sill where he had left it but the large diamond was missing. The diamond had been held in place by four prongs and two of those were now broken off. Mr. Ruby concluded that a thief had pried the diamond from its setting. He was so sure of this that he made no search for the stone but promptly notified defendant's agent who had written the insurance policy. After that he left matters to the Insurance Company until the agent told him to notify the sheriff of the theft which he did a week after the disappearance. There is no evidence that the sheriff became active. In due course Mr. Ruby filed a claim with the Insurance Company for $2,500, the policy's principal sum, stating that the diamond had been stolen. The company refused to pay and this action was brought.

Mr. Ruby had three employees or associates at his dairy plant. He never announced the loss to them and had no suspicion that any of them stole the diamond. There was no evidence that any person other than these or members of the family were on the premises during the time when the diamond is alleged to have disappeared. An expert repair jeweler called by the defendant testified that the prongs securing the diamond were badly worn and that their tips had been soldered rather badly and were in such condition that they would easily break off at slight pressure. Other jewelers called by plaintiff disputed this. There is no direct evidence of a theft and the plaintiff relies on the proposition that the disappearance of the diamond is a mysterious disappearance and therefore is presumed to be due to theft according to the terms of the policy. No person is known to have entered the washroom between the time Mr. Ruby first went to it and his return and no one but the regular employees and the family are known to have been in the vicinity and they are not suspected. The defendant also points out that the ring contained two smaller diamonds which were not disturbed and reasons that it would be un-

reasonable and improbable for a thief to tamper with the ring in the washroom and then leave it with its remaining diamonds rather than immediately to conceal it and carry it off, to be dismantled more privately.

The trial court made these findings and conclusions:

"1. That no proof of theft of the diamond appears in the evidence.

"2. That the presumption of theft under the policy issued by the defendant is not conclusive if it is overcome by a presumption [sic] of the credible evidence in the case.

"3. That the preponderance of the credible evidence in the case indicates to a reasonable certainty that a theft did not take place here and the evidence is contrary to the presumption of theft.

"4. That even with the presumption in his favor, the plaintiff has not met the burden of proof required here by a preponderance of the evidence.

"5. That the defendant is entitled to judgment."

There is no Wisconsin case directly in point but the theft provision in this policy has been frequently construed elsewhere. The leading case is *Davis v. Saint Paul-Mercury Indemnity Co.* (1946), 227 N. C. 80, 40 S. E. (2d) 609, 169 A. L. R. 220. There the assured went on a fishing trip with a friend and placed a sum of money in his pocket. After traveling to the fishing water he went out in a boat which capsized and he was thrown in. When he came out of the water he discovered that his money was gone. There was no suspicion that his friend had taken it. It was held that the provision in the policy does not convert the policy into one of indemnity for mysterious disappearance and it is essential to recovery by the insured that a theft be found to have taken place. The mysterious disappearance raises a presumption of theft but does not conclude the matter. Whether or not a theft may be found depends on all the circumstances and they may be such as to rebut the presumption. On

consideration of all the evidence the jury might have found that there was a theft or that the disappearance of the property was not in fact due to theft and because this issue was not properly submitted the case was remanded for a new trial. The case has been annotated with reference to this policy provision in Anno. 169 A. L. R. on page 257. The editorial conclusion is:

"By this decision the court very soundly limited the effect of the new clause to its proper objective, namely, to afford a somewhat larger measure of protection against theft to the insured, and refused to change it from a theft policy to a policy covering every loss due to mysterious disappearance."

The *Davis Case, supra,* has been followed in a number of later decisions. In *Sigel v. American Guarantee & Liability Ins. Co.* (1953), 173 Pa. Super. 434, 98 Atl. (2d) 376, the insurance policy has virtually the same clause regarding mysterious disappearance that is present in our Ruby case. The insured received from a jeweler a ring and a watch which had been left with the jeweler for repairs. The jeweler put them into an unsealed envelope which the insured put into his trousers pocket. He went to dinner downtown and then to his home in an automobile. There he placed the envelope in a bureau drawer. When his wife opened the envelope in the morning the ring had disappeared. The insurance company refused to pay the loss and this action was commenced. A thorough search of the premises failed to disclose the ring. There was no evidence that the house had been entered during the night or that anyone in the house had misappropriated the ring, and the plaintiff relied upon the presumption of the mysterious disappearance of the insured article. The insurance company offered no evidence. The jury returned a verdict for the insurer. The trial judge, sitting *en banc* with his colleagues, granted a new trial be-

cause he considered his instruction had imposed too great a burden on the plaintiff. The order for a new trial was affirmed by the superior court of Pennsylvania, which said (p. 437):

"A presumption is an inference as to the existence of a fact not known, arising from its logical connection or association with other facts which are known or proved. *Sears' Estate,* 313 Pa. 415, 169 A. 776. Logically, the mere mysterious disappearance of personal property would not justify an inference of a felonious taking. However, if parties choose to create such a presumption by their contract no policy of the law forbids it. Doubtless, it was inserted in the policy to provide more liberal terms, afford larger protection and to obviate the necessity of proving theft by direct evidence, without however converting the policy into indemnity insurance for lost or mislaid property. [Cases cited.] But such a presumption is one of fact only, not a presumption of law. It creates a *prima facie* case for plaintiff, carrying his case to the jury upon evidence of a mysterious disappearance, even though there is no evidence of a felonious taking. From the evidence of a mysterious disappearance and the attendant circumstances the jury can find that a theft occurred; but the evidence is for the jury; and it may likewise find upon plaintiff's testimony alone, with or without countervailing evidence by defendant, that the disappearance was not due to a theft. [Case cited.]"

In *Caldwell v. Saint Paul-Mercury Indemnity Co.* (1950), 210 Miss. 320, 49 So. (2d) 570, the wife of the assured had her diamond ring on her finger in her own house. Sometime during the evening the stone disappeared. She and her children looked for it without success. The next morning she and the maid unsuccessfully looked for it again, using the vacuum cleaner. Two days later the maid was directed to continue the search. Mrs. Caldwell left the house for a while and when she came home the maid was gone. She never came back to collect her pay and neither she nor the stone have reappeared. A jury found for the assured.

An intermediate court reversed, holding that defendant should have had a directed verdict, but the supreme court reinstated the jury verdict and the judgment of the trial court for plaintiff. The supreme court said (p. 331) that, ". . . there were adequate facts to sustain the jury's finding that there was a mysterious disappearance of the stone and therefore to create a presumption of theft. Whether that presumption was rebutted by other evidence and possibilities is a question for the jury. And even if it were rebutted we think that there was enough circumstantial evidence of theft to make a question for the jury on the issue of theft *vel non.*"

In *Loop v. United States Fidelity & Guaranty Co.* (La. 1953), 63 So. (2d) 247, a ring disappeared from the finger of the assured. It was held that the policy provision concerning mysterious disappearance did not overcome the inference from all the facts that the ring was merely lost and a judgment for the company was affirmed. However, the court said (p. 248):

"If she had taken it from her finger in order to wash her hands and had placed it somewhere in the washroom and had forgotten to put it back on her finger and had then returned to the washroom and found it missing, it would have been possible to classify that loss as a mysterious disappearance and to accept the presumption that there had been a theft, but where there is no fact which can be pointed to as evidencing the remotest possibility of theft, we find it impossible to classify the disappearance as mysterious and to accept the presumption that there was a theft."

The consensus of these cases and others on the subject establishes the proposition that in order to recover upon his insurance policy the assured must convince the trier of the fact that the property was stolen. If it were not for the policy provision, in many cases the insured would not be able to do this because all he is able to prove directly is that the property is gone and a finding of theft would rest on speculation

alone and, therefore, would have insufficient support. But when the policy contains the "mysterious disappearance" provision a finding of theft can be sustained although otherwise founded on speculation because by contract the parties have stipulated that theft is presumed from the mysterious disappearance. Accordingly, in such circumstances, if a jury or trial court find a theft, an appellate court should affirm, at least where the evidence of nontheft is not so strong as to be determined as a matter of law. But evidence of nontheft, or of circumstances from which a reasonable inference of nontheft may be drawn, will be sufficient to support a finding that theft has not occurred notwithstanding a mysterious disappearance of the insured property. The policy provision supports a finding of theft made by the trier of the fact but it does not compel that finding if there is evidence upon which a reasonable inference may be made that the property was lost rather than stolen.

In the present case the absence of any suspicious circumstances pointing toward theft, other than the mere disappearance of the diamond, is completely lacking and the improbability of a thief staying in the washroom to pry out one stone and abandon the ring with the two smaller stones for later discovery supports an inference that a theft did not occur. Then, too, Mr. Ruby did not make a search or have any prompt search made. Four or five weeks after the loss the insurance agent made a cursory search, but because of litter on the floors, cracks between floor boards, an abundance of small pieces of broken glass resembling diamonds in the vicinity where the stone was last seen, both the agent and Mr. Ruby concluded any search would be unproductive. A court might well conclude that a more-thorough investigation of the premises was necessary to eliminate the probability that the stone was lost rather than stolen.

Appellant contends that the trial court applied erroneous rules of law and imposed on him a greater burden of proof than the "mysterious disappearance" provision warrants. Appellant cited *Davis v. Saint Paul-Mercury Indemnity Co., supra,* to the learned trial court and we are unable to say that the court's construction of that decision differed from our own, though finding 4, *supra,* may indicate that the court erroneously considered that the presumption, alone, was insufficient to sustain a finding of theft. However, the trial court specifically found:

"3. That the preponderance of the credible evidence in the case indicates to a reasonable certainty that a theft did not take place here and the evidence is contrary to the presumption of theft."

The weight of the evidence and the veracity of witnesses and the drawing of all reasonable inferences from the evidence are matters for the trier of the fact. On the evidence at hand if the trier had found that the diamond was stolen the presumption raised by the "mysterious disappearance" clause of the policy would have required us to affirm. But, to the trier of the fact, "the preponderance of the credible evidence in the case indicates to a reasonable certainty that a theft *did not* take place." (Our italics.) We certainly cannot hold as a matter of law that the evidence and its reasonable inferences establishes the contrary. Although the presumption of theft permits a finding of theft on this evidence, it does not compel one; therefore, we must accept the finding as made and affirm the judgment which rests upon it.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., dissents.