L. Tyson BETTY, Appellant,

v.

The LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY, Limited, and The North British and Mercantile Insurance Company, Appellees.

No. 8559.

United States Court of Appeals Fourth Circuit.

Argued May 29, 1962.

Decided Oct. 3, 1962.

Joel B. Adams, Asheville, N. C. (Adams & Adams, and Francis J. Heazel, Asheville, N. C., on brief), for appellant.

William C. Morris, Jr., Asheville, N. C. (Williams, Williams & Morris, Asheville, N. C., on brief), for appellees.

Before BOREMAN and BELL, Circuit Judges, and BARKSDALE, District Judge.

J. SPENCER BELL, Circuit Judge.

The plaintiff, Betty, brought suit in the State Court against defendants, co-insurers on policies insuring against "all risks of direct physical loss". Contained in the policy was the following provision with respect to Exclusions from its coverage:

"C. (Peril)—This policy does not insure against any loss caused by or resulting from: * * *

"4. Unexplained loss or mysterious disappearance of property (ex-

cept property in the custody of carriers or bailees for hire) ; or loss or shortage of property disclosed on taking inventory ;"

The case was removed for diversity and tried by the Court without a jury. At the conclusion of the plaintiff's evidence, the Court rendered judgment for the defendants under Fed.R.Civ.P. rule 41(b), 28 U.S.C.A. The Court's findings of fact which are relevant to this appeal are summarized as follows : Policies of insurance with both defendants were in full force and effect during the period of time involved when the losses took place for which recovery is sought by this action. The outstanding policies were for $16,500.00 and $43,000.00 respectively, but the defendants had contracted between themselves to share losses equally.

The plaintiff, as assignee of insured, sought to recover for the loss of 1,024 recapped tires of the value of $11,376.64 which were owned at the time of loss by the insured, Biltmore Tire and Recapping Company, Inc., the plaintiff's assignor.

The joint answer set up among other defenses : the invalidity of plaintiff's assignment ; failure of insured to give notice ; a twelve months limitation on commencement of suit contained in the policy, and finally the exceptions to coverage set forth in Section III C.4 quoted above.

The insured suffered a property loss during the period between April 1, 1960, and September 6, 1960, of approximately 1,024 recapped tires of the value of $11,376.64 at its place of business on McDowell Street in Asheville, North Carolina.

The insured took quarterly physical inventories of his stock of merchandise. An operating statement based on the inventory of March 31, 1960, showed an operating profit for the quarter ; but a similar statement based upon the physical inventory for the second quarter of that year showed an unexplained loss in spite of increased sales ; whereupon the in-

sured sought outside expert help to determine the cause of the loss.

The plaintiff, who was president and sole stockholder of the insured corporation, together with experts sent by B. F. Goodrich Company, made a physical inventory of the stock on hand on September 6, 1960. An apparent loss of 1,024 tires was determined by adding to the stock of tires shown to be on hand by the physical inventory of March 31, 1960, all tires processed during the interval and subtracting from this total all sales made. The shortage was revealed by comparing this figure with the stock on hand as shown by their physical inventory of September 6, 1960. The Court referred to this shortage as having occurred "through some unexplained loss or from some mysterious disappearance".

The Court made no findings of fact with respect thereto but did refer in its findings to the testimony of one James Love, who testified for the plaintiff that he (Love) had pleaded guilty in the police court to stealing seven tires from outside the fence surrounding the insured's property just prior to September 6, 1960.

The Court further found as fact that the insured was unaware of its losses until it had caused the inventory of September 6th to be made, and that insured had not known of Love's theft until reported to it by the Asheville Police Department.

From these findings of fact the Court drew the single conclusion:

"* * * that plaintiff could not recover for that all of the evidence indicates that the claimed loss of property was not known prior to and only became known and was disclosed on the taking of the inventory on September 6, 1960."

The Court thereupon dismissed the action.

█ Contracts of insurance are to be construed reasonably and the words used are to be given their ordinary and reasonable meaning. Standard Accident Ins. Co. of Detroit, Mich., v. Winget, 197 F.2d

97, 104 (9 Cir., 1952). The principle was cogently stated by Judge Learned Hand,

"It is quite true that contracts depend upon the meaning which the law imputes to the utterances, not upon what the parties actually intended; but, in ascertaining what meaning to impute, the circumstances in which the words are used is always relevant and usually indispensable. *The standard is what a normally constituted person would have understood them to mean, when used in their actual setting.*" (Emphasis added). New York Trust Co. v. Island Oil & Transport Corp., 34 F.2d 655, 656 (2 Cir., 1929).

■ In order to affirm the judgment below it is necessary to construe the exceptive clause of the policy to mean that no loss is covered if it is first discovered upon taking inventory, no matter what proof may be subsequently brought to light showing the loss to be clearly within the risks for which the policy was written. We feel that such a construction would be unrealistic. It does not seem reasonable to us that business men would enter into an agreement to insure against a loss discovered in one way and not insure against the same loss if it should be discovered in another way. We are, therefore, unable to accept this interpretation of the words under the circumstances of this case.

On the other hand, it would be both reasonable and fair for an insurer to except itself from a loss or shortage reflected solely on the insured's books and not substantiated by any independent external proof—a mere theoretical inventory loss. Such an interpretation is compatible with the other provisions of the exceptive clause which excludes "unexplained loss or mysterious disappearance".

Since the Court erroneously assumed that the plaintiff could not recover if its loss was first discovered by taking inventory, we cannot determine what weight should be given to its further findings of fact concerning the nature of the loss, i. e., whether it was of an undetermined or mysterious nature.

Especially is this true in view of the Court's treatment of the evidence other than that dealing with the insured's books, records, and inventories. The testimony of Love was not offered to show that the insured had lost the seven tires which Love was convicted of stealing, for obviously these tires had been returned to the insured by the police. Love's testimony was to the effect that he had observed a truck loaded with tires driving away from the rear of the insured's lot at night and that he had upon investigation found the seven tires which he was charged with stealing lying on the ground outside the fence surrounding the insured's property. Whether we believe this improbable tale in full, in part, or reject it altogether, the fact that Love was caught and convicted of possessing the insured's tires would tend to show that the property was being stolen from insured's place of business and it was against this risk among others that defendants had insured. Further, the Court rejected the plaintiff's offer of testimony of a series of thefts which occurred prior to the period in question. It appears that the Court rejected the evidence on the grounds that it was offered in the form of a compromise between the parties as to the meaning of the exceptive clause of the policy. But this evidence, especially in conjunction with the Love testimony, might have been admissible as tending to support plaintiff's contentions that his property was being stolen. It is a question of relevancy which must be determined by the Trial Court.

■ The plain provisions of the policy insured against all risks of direct physical loss. Once having shown a loss, the plaintiff should not be required to go forward and prove its loss was not within any one of the numerous exceptions listed in the policy. To escape the broad undertaking of this comprehensive cover it would be the insurer's burden to establish such facts. Jewelers Mutual In-

surance Co. v. Balogh, 272 F.2d 889, and cases cited at 892 (5 Cir., 1959). The exclusion clause here dealt with was originally developed for use in theft policies to protect the insurer against fraud on the part of insureds, especially fraud growing out of so-called "inside jobs". United Sponging Co. v. Preferred Accident Insurance Co., 97 Misc. 396, 161 N. Y.S. 309 (1916); affirmed without opinion in 179 App.Div. 884, 165 N.Y.S. 1116 (1917).

A contract which purported to insure against one major risk only, to-wit: theft, could logically exempt "unexplained loss or mysterious disappearance" from the coverage of the policy because it is not difficult to understand the meaning of the phrase "unexplained loss or mysterious disappearance" as contradistinguished from theft. We would simply interpret it to mean a loss, the surrounding circumstances of which excluded the probability of theft. Nevertheless, the phrase is so vague and so difficult of interpretation that many companies issued policies wherein it was expressly stated that unexplained loss or mysterious disappearance would raise a presumption of theft.

When such an exclusionary clause is inserted in a policy purporting to insure against loss from *all* risks the problem is even more difficult, for here we have no well defined category against which to measure the phrase. Indeed, it would appear that all risk insurance arose for the very purpose of protecting the insured in those cases where difficulties of logical explanation or some mystery surrounded the disappearance of property. Yet here we have a policy which in its insuring clause purports to cover all risks and yet in a vaguely worded exclusion would appear to have withdrawn a large and indefinable amount of that coverage. In a somewhat different context, the courts of North Carolina have defined the phrase to mean "any disappearance or loss under unknown, puzzling or baffling circumstances which arouses wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain." Davis v. St. Paul Mercury & Indem. Co., 227 N.C. 80, 40 S.E.2d 609, 169 A.L.R. 220 (1946).

Much of the current confusion has arisen because of the provision that unexplained loss or mysterious disappearance shall be presumed to be due to theft. In the setting in which the phrase "unexplained loss or mysterious disappearance" is used in the policy under consideration in the case at bar—that is to say, as an exclusion to an all risk policy—we think it means a disappearance of property where the surrounding circumstances offer no logical explanation of what happened to it. The definition would, of course, exclude the probability of theft, and it would also exclude the probability of all of the other perils against which the policy insured. Nevertheless, we do not think that the exclusion can be held to shift the burden from the insurer to the insured to prove that the loss falls within the exclusion. Once a loss is shown it would be incumbent on the insurer to show that such a loss or disappearance was inexplicable or mysterious. Even if we accept the good faith of the insurer in excepting from the risk by an exclusionary clause such a broad and vague area of the coverage, we are at a loss to understand why it should want to assume such a burden of proof; nor are the experts capable of throwing much light on the subject. See Kelly "Mysterious Disappearance" Defined, Insurance Counsel Journal, January 1961. As to the extent of the defendants' burden under the exceptive clause see Advance Piece Dye Works, Inc. v. Travellers Indem. Co., 64 N.J.Super. 405, 166 A.2d 173 (1960).

Since, as we said before, we are unable to determine what weight to give to the Court's findings concerning the nature of the loss in view of its erroneous interpretation of the clause relating to inventory shortages and its rejection of the proffered evidence of prior thefts, we must reverse and remand the case for retrial. Upon retrial, the numerous defenses raised by the answer but not

reached in this trial would put the case in such a posture that nothing would be gained by a detailed discussion of the other points raised on the present record.

Reversed and Remanded for New Trial.