**D. A. GIFFORD, Appellant,**

**v.**

**M. F. A. MUTUAL INSURANCE COMPANY, Respondent.**

**No. 24918.**

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1969.

L. E. Atherton, Milan, for appellant.

P. M. Marr, Milan, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an action on a policy of insurance insuring against loss of cattle by theft. A jury having been waived, the cause was submitted to the court and resulted in a judgment for defendant.

Plaintiff's petition filed on September 28, 1965, alleged that, defendant issued its policy of insurance by which it insured plaintiff against the death or theft of 100

head of Angus cattle with a maximum of $150 per head. It alleged that 8 head of the cattle covered by the policy had been stolen and that after due notice the company refused to pay.

The answer of defendant admitted the incorporation of defendant, the issuance of the policy and that it had refused to pay, but denied everything else.

For several years prior to November, 1963, D. A. Gifford, plaintiff below, appellant here, had been engaged in pasturing, feeding and caring for cattle. Yearly contracts were entered into by Oppenheimer Industries, Inc., of Kansas City, as agent for the owner of the cattle and plaintiff. The last contract was terminated November 1, 1963. Plaintiff was leasing 1300 to 1500 acres of land in Sullivan County, and taking care of 450 head of cattle. The cattle in 1962–63 consisted of 200 head of Angus and the remainder Hereford.

Under the terms of the contract in force during the 1962–63 period, Oppenheimer Industries, Inc., acting as agent for Cuttag Hereford Farms, owner of the cattle, was to pay plaintiff $60 per head for pasturing, feeding and caring for the cattle.

On April 4, 1962, plaintiff applied to an agent of defendant at Milan, for a policy of insurance, and the policy in question Exhibit I, was issued. It insured plaintiff against loss of cattle by "Theft, but excluding escape or mysterious disappearance." The policy covered 100 head of Angus cattle with a maximum of $150 per head. It did not cover any Hereford cattle.

Plaintiff, who was the only witness, testified that at the time the policy was issued the cattle were on his home place; that the cattle were moved from one pasture to another at different times during the year; that he made head counts of the cattle from time to time, usually on a week to week basis; that on September 30, 1963, he rounded up the cattle and got a perfect count; that there was no question as to the number he had; that he went down two or three times after that and counted the cattle; that on October 30, 1963, he again counted the cattle and they were all there. This was a count made where the cattle were all out in a timber and bottom land pasture and plaintiff was assisted by a boy working for him.

Plaintiff further testified that the first knowledge he had that any cattle were missing was about November 1, 1963, when they were rounded up to be shipped out. The Black cows were 8 short and "2 coming yearlings" and "8 White Faces," or a total of 18 head. On discovery of the shortage plaintiff and his hired hand went to the field "where we got these cattle" and investigated the fences; that there was no evidence any place where the cattle could have gone through the fences; that they spent a day, probably two days, looking for the cattle, then went to the neighbors for two or three miles around and none "had seen anything or knew anything"; that they also went into the neighboring fields and looked around but found none of the missing cattle.

Around November 6, plaintiff reported the loss to the Sheriff of Sullivan County, and plaintiff put an advertisement in the newspaper published in Green City, which read: "Lost, Strayed or Stolen, 10 Angus cows and 8 Hereford yearlings. If found please notify Aldon Gifford (Phone 874-3356)".

Plaintiff also testified that he had not had any cattle disappear mysteriously or from unknown cause, and that it was uncommon for them to get out; that "one time some years before" some 100 head of cattle had gotten out; that they were found near the County Line, which was about 1½ miles from the pasture; that the gate had been left open by some fox hunters; that it was uncommon for cattle to get out and there were none out during the year of the loss.

Plaintiff contends that he proved the theft of the cattle by circumstantial evi-

dence. On the other hand, defendant asserts that the evidence established nothing more than the mysterious disappearance, a risk expressly not covered by the policy.

The evidence squarely fits the definition of "mysterious disappearance" as set out by our Springfield Court of Appeals in Hammontree v. Central Mutual Ins. Co., 385 S.W.2d 661, l. c. 666. The court referring to the case of Davis v. St. Paul Mercury & Ind., 227 N.C. 80, 40 S.E.2d 609, 169 A.L.R. 220, says, l. c. 666:

"The court defined 'mysterious disappearance' as embracing 'any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity.' The quoted judicial definition has been approved in most of the reported 'mysterious disappearance' cases, including cases under each of the several policy provisions hereinbefore noted. Doubting our ability to improve upon this definition, we likewise use it."

Apparently this is the only time that "mysterious disappearance" has been defined by an Appellate Court in Missouri.

It is to be noted that in the *Davis* case the policy provided that mysterious disappearance of insured property is presumed to be due to theft. That is, the policy instead of excluding mysterious disappearance as in the case at bar, had a special provision that mysterious disappearance was presumed to be due to theft.

The *Hammontree* case points out that where the policy does not include mysterious disappearance as a part of the definition of theft *it denotes a separate and additional risk*, either covered, or not covered by a particular policy. In the case at bar mysterious disappearance is specifically excluded, and the plaintiff does not make a

case of theft where the evidence shows only mysterious disappearance.

Plaintiff relies strongly on the case of Betty v. Liverpool & London & Globe Ins. Co. Ltd., 310 F.2d 308. That case is not in point for two reasons. First, the policy there insured against all *risks of direct physical loss*. Second, that case is contrary to the *Hammontree* case because it begs the question by construing "mysterious disappearance" as synonymous with theft, while the Hammontree case points out, as above indicated, that "mysterious disappearance" is not a part of the definition of theft, but *denotes a separate and additional risk, either covered or not covered by a particular policy*. In the case at bar we have a policy of definitely limited coverage. Not only is there no provision in this policy that permitted "mysterious disappearance" to be construed as theft (as some policies provide), but the "mysterious disappearance" by reason of the specific exclusion *is not evidence of theft*.

Moreover, in the *Betty* case the 1024 tires involved therein were inanimate property. All cases cited by plaintiff deal with inanimate property. No case is cited dealing with animate property, such as livestock that can disappear mysteriously without the assistance of a thief. When 1024 tires, television sets and other such inanimate property is deposited in a given spot and then disappears somebody got it. It is an entirely different situation where livestock on foot and on the move is not found where it is left. Such property can disappear without human intervention and we cannot guess, surmise and speculate that it got away by reason of human intervention when the evidence permits us to guess, surmise and speculate that it might have disappeared for numerous other reasons.

As stated, the policy in the *Betty* case insured against all risks of direct physical loss. The policy in the case at bar insured against theft only. In the *Betty* case the court was not construing any such type of policy as we have in the case at bar. In

this case we are dealing with the risk *specifically not covered by the policy*. It covered only theft. We have a policy of definitely limited coverage. Not only is there no provision in this policy that permitted "mysterious disappearance" to be construed as theft, the mysterious disappearance, by reason of the exclusion, is not evidence of theft.

Plaintiff cites Garner v. N. J. Fidelity & Plate Glass Ins. Co., 200 S.W. 448 (Mo. App.). That case involved jewelry consisting of precious stones of considerable value which were placed in a chamois bag, which in turn was placed in a handbag on a shelf in the closet of the owner's bedroom on the second floor and covered with some folded garments. This was in the forenoon. The owner returned late in the afternoon. While she was away the two servants were at the home at work until about 3:30 p.m. when the man was called by telephone to bring the automobile down town and take the plaintiff home. After the chauffeur left the house the maid also left, going to the grocery store to make some purchases. She was not at home when the plaintiff and the chauffeur arrived shortly after 5 o'clock.

When plaintiff and the chauffeur drove upon the premises "they observed a strange man coming out of the driveway, who appeared to be surprised and somewhat disconcerted at seeing them, and who, looking at them attentively, walked rapidly away. A witness who was on the premises nearby, testified that the strange man had come on the premises that afternoon, had gone first to the garage door, then to the basement of the house, and then to the kitchen door through which he entered into the house. After remaining inside for half an hour he reappeared at the same door and left the premises by the driveway. Plaintiff and the chauffeur found the kitchen door unlocked." Later in the evening "the wife went to the closet and found the chamois bag and handbag were there, but the jewels were gone. The closet was disarranged and mussed up showing that someone had made a hurried search through it."

Of course, such circumstantial evidence was sufficient to make a case. But there are no such circumstances in the instant case. For example, nobody saw any strange truck at or near the pasture; nobody saw a strange truck traveling to or from where the cattle were kept; nobody heard any unusual activity at night near the pasture; no strange cattle passed through any known sale barn in the area; there was no evidence that the cattle were at any place where they could only have been by means of human agency; there is no evidence of strange or suspicious tire tracks at or near the pasture or gates; no evidence of anyone being at or near the cattle under suspicious circumstances; no evidence of fences being cut or gates disturbed. In short, there is no evidence of the intervention of any human agency. The only circumstances are circumstances showing mysterious disappearance, a risk not covered by the policy.

Plaintiff also cites Hornbeck v. Southwestern Surety Ins. Co., 195 S.W. 1054 (Mo.App.). That case does not support plaintiff. The property involved there was a stolen ring kept in its individual box, and this box in turn was kept inside a jewelry case or box, which reposed on the dresser in the owner's room. A few days later it was not there. The evidence did not indicate that the ring might have been left somewhere else, or that it could have innocently or accidently been moved elsewhere. The evidence disclosed that there were persons who had opportunity to take the ring, if they were so disposed and succumbed to the temptation. There was no provision in the theft policy excluding disappearance. Therefore, the case is not in point because in the case at bar mysterious disappearance is an excluded risk. Again the *Hornbeck* case was dealing with inanimate property.

And plaintiff cites Stern v. Employers Liability Assurance Corp., 249 S.W. 739 (Mo.App.). In that case a lavaliere, other

jewelry and $40 in money were placed in a safety bag in the dresser drawer in the owner's bedroom, where she always kept her jewelry. Several days later, desiring to wear the lavaliere, she took the bag from the dresser drawer, opened it and found the lavaliere gone, but the other jewelry and the $40 in money had not been disturbed. Only the lavaliere was missing. The dresser drawer had not been locked. Various persons as domestic servants had access to her bedroom and dresser and had the opportunity to pilfer the jewelry were they so disposed. Other household employees had been in and out. Among others, was a young woman who applied for the job as cook, whose conduct was such as to arouse suspicion and comment in the family at the time. This was on Sunday evening and the owner received her in her bedroom where the jewelry was. "It appears in evidence ,that this applicant had not the appearance of a person who, ordinarily, would seek such employment." The owner's bedroom and dresser drawer were left unlocked. The next morning the girl left the house before the family arose. She departed before breakfast, taking her effects with her, and without explanation as to why she was leaving, saying that she wanted to catch a train, "and it was noted that she 'seemed much excited to get away' ". Certainly such circumstantial evidence was sufficient to make a submissible case of theft.

The burden was upon plaintiff to prove that the cattle had been stolen. In our opinion he failed to sustain that burden.

Plaintiff also contends that mysterious disappearance was an affirmative defense which must have been pleaded specially. With that we do not agree.

Plaintiff pleaded theft. The answer denied a loss by theft. Plaintiff's evidence showed only mysterious disappearance. In the case of Gennari v. Prudential Ins. Co. of Amer., 335 S.W.2d 55 (Mo.Sup.), the plaintiff sued on a policy covering death by accidental means. The answer was a general denial. The evidence was that death was caused by disease, and plaintiff contended that was an affirmative defense that had to be specially pleaded. The court held it was not an affirmative defense and could be shown under a general denial, as follows, l. c. 60–61:

"We come to the crucial question. Is proof of the fact that the death of the insured resulted from disease proof of an affirmative defense, or is it merely proof of a fact inconsistent with and destructive of the essential element of plaintiff's case that the insured's death resulted from accidental means?" * *

"There can be no doubt that under a general denial the defendant has the right to adduce evidence showing the insured died of disease. This is but a means of proving he did not die from accidental cause which the plaintiff has alleged as an essential part of her case". * * *

"Such an allegation is entirely consistent with and within the scope of a general denial. It is nothing more than an assertion that he did not die of accidental means, and is not an allegation of an affirmative defense."

So in the case at bar the showing that the cattle mysteriously disappeared is nothing more than that the loss was not due to theft, and would not be an allegation of an affirmative defense.

But, pleaded or not so pleaded, the plaintiff's *own evidence* showed only mysterious disappearance whereas he had to establish theft as the policy provided, theft as he alleged, and that burden rested on him throughout and he rested his case without having met that burden. The case of White v. Citizens Ins. Co., Mo.App., 355 S.W.2d 421, was a suit over the loss of a boat. One of the defenses was that the loss was caused by the negligent operation of the boat by plaintiff. The court said at l. c. 423: "It was an affirmative defense

which must have been pleaded, *unless it was shown by plaintiff in making out his case.*" (Italics ours.)

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

HOWARD, P. J., CROSS, J., and MORGAN, Special Judge, concur.

SHANGLER, J., not participating because not a member of the Court when the cause was submitted.