Gerhard LOVAS, Plaintiff-Appellant,

v.

ST. PAUL INSURANCE COMPANIES, a corporation, Defendant-Appellee.

No. 9163.

Supreme Court of North Dakota.

March 12, 1976.

**54**

Lamb, Schaefer & McNair, Moorhead, Minn., for appellant; argued by Michael D. McNair, Moorhead, Minn.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for appellee; argued by E. Thomas Conmy III, Fargo.

SAND, Judge.

This is an appeal from the decision of the Cass County District Court granting a judgment notwithstanding the verdict to St. Paul Insurance Companies.

The appellant Gerhard Lovas took out a policy of insurance with St. Paul Insurance Companies (through the Goose River Insurance Agency of Mayville, North Dakota) on

August 2, 1973. The policy insured certain hogs in which Lovas had a half interest, "against theft but excluding escape or mysterious disappearance." On January 29, 1974, Lovas discovered a shortage and reported this to the insurance agent, who later filed a claim with the insurance company alleging the theft of 79 of the hogs. The insurance company denied the claim on the ground that the alleged loss was not covered under the terms and conditions of the policy. The issue was brought to the Cass County district court, where a jury returned a verdict against the St. Paul Insurance Companies. The defendant moved for a judgment notwithstanding the verdict or alternatively for a new trial. The trial court granted defendant's motion to set aside the verdict and for judgment notwithstanding the verdict.

Lovas appealed from this decision, claiming there was substantial evidence to support the jury verdict and that the trial court erred in setting aside the jury verdict in his favor and in ordering judgment notwithstanding the verdict in favor of St. Paul Insurance Companies.

The rule stated in *Lee v. AAA North Dakota Automobile Club,* 68 N.W.2d 835, 837 (N.D.1955), and cited in *Erhardt v. Gold Seal Chinchillas, Inc.,* 144 N.W.2d 744 (N.D. 1966), is that in an appeal from a judgment notwithstanding the verdict "the first question for decision is whether the defendant was entitled to a directed verdict at the time the motion for a directed verdict was made. [Citations omitted.] This question in turn is dependent upon whether the evidence, when viewed in the light most favorable to the party against whom the judgment notwithstanding was entered, presents any substantial issues of fact for the jury to determine. [Citations omitted.]"

This Court has held that on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party in whose favor the verdict was rendered, and such motion should not be granted unless the evidence shows that the moving party is entitled to

judgment on the merits as a matter of law. *Smith v. Michael Kurtz Construction Company,* 232 N.W.2d 35 (N.D.1975); *Jore v. Saturday Night Club, Inc.,* 227 N.W.2d 889 (N.D.1975).

This Court said in *Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182 (N.D.1973), that

"When ruling on a motion for a directed verdict or for judgment notwithstanding the verdict, the court must decide whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, reasonable men could reach but one conclusion as to the verdict, or, otherwise stated, whether the evidence, viewed most favorably to the party against whom the motion is made, and giving that party the benefit of all reasonable inferences from the evidence, compels a result with which no reasonable person might differ."

▆ As to the proof of theft, we are satisfied, and it appears to be without question, that in an action to recover on a policy insuring against theft the same quantum of proof is not required to support a recovery as is required or as is necessary to support a conviction for theft.

Before analyzing the evidence we should examine the pertinent provision of the policy to determine its legal effect and what evidence is needed to support a recovery thereunder.

"PROPERTY COVERED:

"This Policy covers the following livestock of the Insured:

. . . . .

"C.  Swine $80.00 [per animal]

"Total amount of insurance $48,160.00

"1.  PERILS COVERED.

"This policy insures against:

. . . . .

"B.  Theft, but excluding escape or mysterious disappearance.

"2.  PERILS EXCLUDED.

"This Policy does not insure against:

[Then lists a number of items which are not covered by the policy which are not pertinent.]"

The underlined language in "B" is pertinent to the issue before us on appeal.

A brief review of case law on similar policy provisions will also be helpful.

Early theft insurance policies merely provided for coverage for loss by theft but did not include or exclude or make reference to mysterious disappearance. The measure of proof required of the insured varied, but as a general rule it was held that a logical inference of a felonious taking might be drawn from circumstances surrounding a mysterious disappearance. *Stich v. Fidelity & Deposit Co. of Maryland,* 159 N.Y.S. 712 (Sup.1916). See also, *Reed v. American Bonding Co.,* 102 Neb. 113, 166 N.W. 196 (1918), and *Emery v. Ocean Accident Guarantee Co.,* 209 Mich. 295, 176 N.W. 566 (1920).

Occasionally, provisions were added to the effect that mere disappearance of the insured object would not be deemed sufficient evidence of its loss by theft or burglary.

Under the old policies it was not necessary for the insured to offer direct proof of the theft. Circumstantial evidence could be relied on and if the insured was able to prove facts and circumstances sufficient to justify the inference of theft as the more rational hypothesis the case would go to the jury. Proof of the mysterious disappearance of property alone was insufficient to support a verdict; "and if there was no evidence of a breaking and entry or other circumstance pointing to theft as the more probable cause of the loss, a recovery under the policy was not permitted. Thus, the insured, under the old policies, often-times found his claim contested and encountered difficulty in making out a case for the jury." *Davis v. St. Paul Mercury & Indemnity Co.,* 227 N.C. 80, 40 S.E.2d 609 (1946).

In 12 A.L.R.3d 866, 867, Theft Insurance—Disappearance, we find the following:

"§ 2.  Background and summary

"Pre-1943 burglary and theft insurance policies occasionally contained provisions to the effect that disappearance of the insured object would not be considered evidence of theft or burglary. Generally, these provisions were interpreted as not preventing the insured from proving his loss through theft or burglary by the use of circumstantial evidence. And since a mysterious disappearance was one circumstance from which a theft might be deduced, the courts readily accepted proof of disappearance of insured property under mysterious circumstances as adequate to support recovery under a policy in which the insurer agreed to pay for loss by theft.

"Prior to 1943, however, the insurance companies varied widely in their requirements as to proof of theft, and in order to bring about a greater uniformity in adjustment practices and thereby eliminate a source of policyholder dissatisfaction, and motivated not so much by a sense of resignation as by a desire to make the policy more informative in this respect, both to insurance companies and policyholders alike, a clause specifically covering the 'mysterious disappearance' contingency was introduced into the standard form theft policy, on April 19, 1943.

"Such a clause, as originally introduced, usually read: 'The word "theft" includes larceny, burglary and robbery. Mysterious disappearance of any insured property shall be presumed to be due to theft.' This presumption clause had the effect of creating a contractual rule of evidence which facilitated proof of 'theft' by the insured in the absence of evidence either affirmatively establishing or clearly negating the existence of a theft in fact.

"Many persons thought that the presumption clause was designed to broaden the coverage of the policy so as to make it extend to losses which would not otherwise be covered. It was reasoned that, something new having been added to the policy, something additional in the way of protection must have been intended. As noted, however, the clause was not in-tended to give more coverage but rather was designed to reflect what had, by 1943, long been the judicial view as to what kind of evidence it takes to prove a loss within the coverage of a theft policy.

"The unmistakable trend has been toward an expansion of theft coverage to include loss from mysterious disappearance. Some policies actually include the term 'mysterious disappearance' within the definition of 'theft,' while others simply co-ordinate the contingencies covered by offering protection against loss by 'theft or attempt thereat or mysterious disappearance.' The general rule in either instance has been that proof of mysterious disappearance alone suffices to enable the insured to recover, even absent a showing as to the probability of theft."

It has been occasionally held or recognized that policies insuring property against burglary or theft containing the provision that the mere disappearance of the insured object shall not be deemed evidence of theft does not prevent the insured from establishing theft by circumstantial evidence. This is so even though the policy contained a provision requiring the production of direct or affirmative evidence. See 12 A.L.R.3d 865.

It has also been recognized by some jurisdictions that an insurance policy making mysterious disappearance a presumption of theft has the effect of creating a rule of evidence by contract. Such provision has been held to raise only a rebuttable presumption but does not broaden the coverage itself to include losses by mysterious disappearance. See 12 A.L.R.3d 865, and cases cited thereunder.

In 5 Appleman, Insurance Law and Practice, § 3173.25, at page 508, the statement is made that the insured, under a presumption provision, does not have to produce evidence excluding the probability that the property was not stolen or prove that larceny was the more rational inference, or prove who stole the article. Accordingly, under this provision, the mysterious disappearance of

the insured property without explanation may be sufficient to allow recovery.

In *Davis v. St. Paul Mercury & Indemnity Co., supra,* the Court stated that such a mysterious disappearance clause was designed to afford the insured a larger measure of protection than under the old theft policies. Theft is presumed until the presumption is rebutted, but the burden of proof is at all times on the plaintiff. If the jury finds from the evidence that the property did mysteriously disappear, such finding compels the inference of theft, unless the facts and circumstances surrounding the disappearance are such as to rebut the presumption. See also, *Caldwell v. St. Paul Mercury-Indemnity Co.,* 210 Miss. 320, 49 So.2d 570 (1950); *Gordon v. Eureka Casualty Co.,* 187 Pa.Super. 636, 146 A.2d 379 (1958); *Ruby v. Farmers Mutual Auto Ins. Co.,* 274 Wis. 158, 79 N.W.2d 644 (1956).

The presumptive provision, however, does not change the policy from a theft policy to one covering every loss due to mysterious disappearance. Appleman, *supra,* p. 508.

The trend has been to give more certain coverage to the insured through expansion of theft coverage by including loss from mysterious disappearance. Instead of inserting a presumption provision, policies have either provided for coverage for "theft or mysterious disappearance" or coverage for theft which is defined to include mysterious disappearance. See, *Conlin v. Dakota Fire Insurance Company,* 126 N.W.2d 421 (N.D.1964).

In the *Conlin* case the court defined mysterious disappearance to mean that "the disappearance be under unknown, puzzling and baffling circumstances which arouse wonder, curiosity, or speculation, or under circumstances which are difficult to understand or explain." The court stated that if mysterious disappearance were intended to apply only to disappearances where theft was shown to be possible or probable the exception of mysterious disappearance of a precious or semiprecious stone from its setting would be unnecessary.

The court then referred to § 9–07–19, NDCC, which provides that any uncertainty in a contract should be interpreted most strongly against the party who caused the uncertainty to exist. Accordingly, the court said that the ambiguity, if any, which existed in the present contract (insurance policy) must be construed in favor of the insured. It then concluded that in light of our statutory rule of construction the language of the policy must be construed to mean that the disappearance of the luggage checked with the airline by the owner in connection with his travel was a mysterious disappearance covered by the theft provisions of the insurance policy.

In Washington and Lee Law Review, Vol. XXII, page 291, Ronald W. Sommer discussed the mysterious disappearance in a slightly different view from the one set out in 12 A.L.R.3d, *supra,* as shown in the following excerpts:

"Fraudulent claims constitute a substantial moral hazard for companies writing theft insurance, and insurers ordinarily require the insured to supply 'proof' that his loss did occur by theft. There are, however, many instances in which the insured can show only that an item has disappeared, and that it was stolen is merely a conjectural explanation, perhaps supported by circumstantial evidence. It has been said that indemnification claims under the theft clause for unexplained disappearances were often determined by the mere whim of the insurer. As a result of dissatisfaction with the clause limiting coverage to 'theft,' the 'mysterious disappearance' clause was added in order to define the coverage more specifically.

. . . . .

"The recent cases seem to indicate that the insurance companies have created, perhaps unintentionally, a new insurance coverage which is substantially different from that for theft, but which does not extend so far as to be an all-risk coverage. The suggestion has been made that emphasis in deciding a mysterious disappearance claim should be placed on the

'mysteriousness' of the loss. This approach seems reasonable if, as in *Hammontree,* it is applied so that the insured has the initial burden of showing a 'mysterious disappearance,' whereupon the burden shifts to the insurer, who, in order to deny the claim must show a rational explanation for the disappearance."

Our review of insurance cases involving theft insurance brought to light a recent interesting decision in *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.,* 227 N.W.2d 169 (Iowa 1975).

In the Iowa *Fertilizer* case the Supreme Court held that even though the insurance policy's definition of "burglary" required the exterior of the premises to bear visible marks of force and violence, and even though only an interior door of the insured's warehouse was damaged during burglary, the insured could nevertheless recover for its loss (1) under the doctrine of reasonable expectations, (2) on the theory of breach of implied warranty, and (3) because the liability-avoiding provision in the definition was, in the circumstances of the case, unconscionable.

As to the instant case, however, we are not warranted or justified, nor are we in a position to even seriously consider the principles announced in the *Fertilizer* case, because of the state of the record and the lack of evidence in the record relating to the circumstances surrounding the purchase of the insurance policy. The case, however, may be an indication as to what principles of law the courts may consider in the future on similar insurance policies or related policies.

The cases cited or discussed in the A.L.R. Annotation, *supra,* or in this opinion thus far, dealt with and involved inanimate objects, and none involved cattle or animate creatures, which is the situation in the instant case.

Lovas relied heavily upon the case of *Long v. Glidden Mutual Insurance Association,* 215 N.W.2d 271 (Iowa 1974), which involved an insurance policy containing a provision that loss by theft requires substantial proof by the insured and that no

coverage shall apply to loss caused by or resulting from mysterious disappearance or to loss discovered through inventory or other unaccountable shortages. The court took specific recognition that the soy beans involved were of a quantity and bulk not readily susceptible of being accidentally mislaid or lost and as such the disappearance gave rise to an inference of theft, and on such basis it concluded that the evidence supported a finding that the loss of the soy beans was due to theft rather than a mysterious disappearance. The property in question was inanimate, whereas in the instant case it is animate property, but such distinction is not necessarily dispositive of the issue.

There is an interesting discussion by the Fourth Circuit Court of Appeals in *Betty v. Liverpool and London and Globe Insurance Co.,* 310 F.2d 308 (4th Cir. 1962), a policy which insured against "all risks of direct physical loss." It contained the exclusion as follows:

"This policy does not insure against any loss caused by or resulting from: . . . 4. Unexplained loss or mysterious disappearance of property (except property in the custody of carriers or bailees for hire); or loss or shortage of property disclosed on taking inventory."

The trial court denied the claim for loss of property filed by Betty on the basis that the loss discovered or disclosed was the result of an inventory and therefore excluded under the policy.

On page 311, the Court of Appeals in the *Betty* case said with reference to the term "unexplained loss or mysterious disappearance":

"We would simply interpret it [mysterious disappearance] to mean a loss, the surrounding circumstances of which excluded the probability of theft. Nevertheless, the phrase is so vague and so difficult of interpretation that many companies issued policies wherein it was expressly stated that unexplained loss or mysterious disappearance would raise a presumption of theft."

The court then examined the definitions given to the term "mysterious disappearance" and continued by saying:

"The definition would, of course, exclude the probability of theft, and it would also exclude the probability of all of the other perils against which the policy insured. Nevertheless, we do not think that the exclusion can be held to shift the burden from the insurer to the insured to prove that the loss falls within the exclusion. Once a loss is shown it would be incumbent upon the insurer to show that such a loss or disappearance was inexplicable or mysterious."

The case was remanded to the trial court for a new trial.

Our research disclosed only two cases involving animate creatures, which we will now examine.

In *Gifford v. M.F.A. Mutual Insurance Co.*, 437 S.W.2d 714 (Mo.App.1969), the court had under consideration an insurance policy against loss of cattle by "theft but excluding escape or mysterious disappearance." The court made this observation:

"No case is cited dealing with animate property, such as livestock that can disappear mysteriously without the assistance of a thief. When 1024 tires, television sets and other such inanimate property is deposited in a given spot and then disappears somebody got it. It is an entirely different situation where livestock on foot and on the move is not found where it is left. Such property can disappear without human intervention and we cannot guess, surmise and speculate that it got away by reason of human intervention when the evidence permits us to guess, surmise and speculate that it might have disappeared for numerous other reasons."

However, we should point out that in the instant case there was a feed lot fence which contained the hogs within a certain area.

The court in the *Gifford* case concluded that the plaintiff's own evidence showed only mysterious disappearance, whereas he had to establish theft in accordance with the provisions of the policy and the burden rested on him throughout. The plaintiff rested his case without having met this burden.

In *Raff v. Farm Bureau Insurance Co. of Nebraska*, 181 Neb. 444, 149 N.W.2d 52 (1967), the court had under consideration a policy which included the following term and conditions:

"Theft and overturn. This insurance is extended to include direct loss by theft (but excluding escape, mysterious disappearance, inventory shortages, wrongful conversion and embezzlement), and overturn. In the event of loss by theft, the insured shall give immediate notice to the nearest law enforcement officer, but shall not, except at his own cost, offer to pay any reward for recovery."

This case involved the disappearance of hogs, two of which returned. There was eyewitness testimony that some of the hogs had strayed. In the instant case we have no such evidence. There was no evidence in *Raff* that the missing hogs were sold or stolen. As to the term "mysterious disappearance," the court used the definition found in *Conlin, supra*. The jury found for the plaintiff and the insurance company appealed. The court stated that conjecture, speculation, or choice of possibilities is not proof. It said there must be something more which would lead the reasoning mind to one conclusion rather than another. The court emphasized that the most plausible conclusion brings the loss of the hogs in the manner set forth by the evidence merely within exclusion of the policy. The claim for the loss was denied because the owner failed to produce evidence of theft.

The evidence on generalities and issues in the *Gifford* and *Raff* cases are somewhat similar with the instant case, but by careful analysis we find a substantial difference as to the significant or important facts. In the instant case, the pigs were in a properly maintained fence with adequate food and the evidence for all reasonable purposes ruled out escape, which was not the situation in the *Gifford* and *Raff* cases.

■ Furthermore, we do not believe the classification of property as either animate or inanimate is controlling, but rather the manner and circumstances as to how the property is secured, protected, used, located, etc., is significant.

With this background, we must now examine, review, or compare the evidence with or in light of the provisions of the policy to determine whether or not its conditions have been fulfilled.

The appellant argues that the evidence in this case is sufficient to show theft, while the insurance company claims that only a mysterious disappearance has been shown.

At the trial, Lovas introduced evidence which he claimed tended to show theft. Lovas testified that he took out the insurance policy because the "thefts of hogs were so high." "There was a lot of it going on across the river." At this time the price of hogs was relatively high.

The hogs were kept in a securely fenced feed lot area. All hogs were accounted for on December 20, 1973. After some hogs had been taken to the market, the loss of 79 hogs was discovered on January 29, 1974. At that time no breaches were found in the fence. No holes were found dug under the fence by the hogs. The ground was frozen. There was testimony that hogs cannot walk on ice. The Elk River, bordering the property, was frozen during this period. No open gates were discovered. Feed was kept in front of the hogs at all times so that it would be unlikely that they would leave the area. When hogs had strayed in the past they were found trying to get back in. Lovas testified that the missing hogs were "heavy" hogs ready for delivery to market.

No hog carcasses were discovered in the area, and no neighbors reported any stray hogs.

The location of the hog pens was such that it was out of sight of the only house located nearby. Robert Mettler, who lived in the house, was away during the weekend "a lot." Lovas testified that he only went to the pens when he was in the area—once or twice a week. Peter Backlund, who took care of the hogs, only came out before and after work.

The pens were located next to the pellet plant and there were many trucks capable of carrying the hogs using the road by the pens.

The evidence also showed that there were no strange tire tracks found leading to the hog pens; no one heard any unusual activity at night near the pens; no strange hogs passed through any known sale barn in the area; there was no evidence of fences being cut or gates being disturbed; and no evidence of anyone being at the pens under suspicious circumstances. There was no evidence that the hogs were ever at any place other than where they were taken by means of human endeavor.

Lovas did not make a theft loss claim with his insurance company immediately after the loss was discovered. He never reported the loss to the police. The insurance agent filed a theft loss claim for Lovas on April 16, following the loss. We do not know if the policy required notification to the police immediately after discovery of loss or theft. Neither was this point argued or mentioned except as an evidentiary matter.

With these facts in mind, we now turn again to the policy. The provisions of the policy in the instant case seem to be contra to the trend expressed in the 12 A.L.R.3d Annotation, *supra*. Whether this trend applies to insurance of livestock we do not know.

■ Be that as it may, the insured in any event is required to prove the loss by theft by either direct or circumstantial evidence, and the insured has always been and should continue to be permitted to prove or establish a fact issue by circumstantial evidence. If the provision "theft, but excluding escape or mysterious disappearance," were construed as contended by the insurance company, Lovas will have been effectively denied the use and benefit of circumstantial evidence. This would be tantamount to denial of coverage for theft because theft is generally carried on in a secretive manner

and a cleverly operating thief would not leave any evidence to establish theft. Under such circumstances the insured would not be able to prove theft if he were denied the right or privilege to establish it by circumstantial evidence, and consequently the insured would never be able to recover under the policy. We do not believe justice permits a construction which will bring about such results.

This court in *E. E. Bach Millwork Co. v. Meisner & Co.*, 228 N.W.2d 904, on page 910 (N.D.1975), said:

> "In exercising appellate jurisdiction it is the object of this court to assure ultimate justice as far as possible to the parties concerned within the appropriate applicable rules of law."

Neither do we believe justice would be accomplished if we were to hold that merely because the circumstantial evidence also established a mysterious disappearance, it could not be relied upon by the trier of facts to establish a probable and reasonable inference of theft where the policy contained an exclusion of mysterious disappearance.

We believe that justice requires that circumstantial evidence be permitted to be used to establish theft or to establish an inference of theft.

> "Any issue may be proved by circumstantial evidence or may be proved by a combination of both direct evidence and circumstantial evidence.
>
> "A well connected train of circumstances is as cogent of the existence of a fact as any array of direct evidence, and may outweigh opposing direct testimony; and the concurrence of well authenticated circumstances has been said to be stronger evidence than positive testimony unconfirmed by circumstances.
>
> "For the circumstantial evidence to be sufficient to warrant the finding of a fact, the circumstances must lead to the conclusion with reasonable certainty, must have sufficient probative force to constitute the basis for a legal inference, and not for mere speculation; but it is generally held that for circumstantial evi-

dence to be sufficient, absolute certainty is not required. The conclusion must be a reasonable and probable one, and must follow logically from the facts." 32A C.J.S. Evidence § 1039, page 748.

> ". . . although it has been said that a verdict cannot be based on conjecture and inference, it is a well-established rule that a verdict or finding may be based on reasonable inferences fairly drawn from the facts in evidence and a material fact need not be proved by direct evidence; it is sufficient if there is evidence from which the fact can properly be inferred." 32A C.J.S. Evidence § 1044, page 823.

In *Stokes v. Dailey*, 85 N.W.2d 745 (N.D. 1957), this court, in a malpractice case, said:

> "While a jury may not resort to conjecture or surmise or be permitted to fancy or imagine situations and circumstances which do not appear in the evidence, a jury may consider facts and circumstances proved, and make such just and reasonable inferences therefrom as the guarded judgment of reasonable men would ordinarily make under like circumstances. They might find any fact proven which they believe might rightfully and reasonably be inferred from the evidence in the case, but such inferences should be logical and natural results drawn from the evidence by proper deduction. *Scheid v. Cavanagh*, 65 N.D. 596, 260 N.W. 619."

In the *Long* case, *supra*, 215 N.W.2d at page 272, the court said:

> "Trial court findings of fact in a law action are binding on us if supported by substantial evidence. We view the evidence in its most favorable light to sustain those findings. Where, as here, the circumstantial evidence is relied on, it must be sufficient to make the theory asserted reasonably probable, not merely possible, and more probable than any other theory based on such evidence; however, it is generally for the trier of fact to say whether circumstantial evidence meets this test."

This principle of law, as well as those stated on this subject in *Lee, Erhardt, Smith, Jore* and *Nokota Feeds, supra,* apply to this case.

■ Where circumstantial evidence may be used to establish a fact, certainly the same circumstantial evidence or similar circumstantial evidence may be used to establish a presumption.

The policy insures against "theft, but excluding escape or mysterious disappearance." This provision is found under the heading, "Perils Covered." The policy also contains a heading "Perils Excluded." However, we believe that the language, "but excluding escape or mysterious disappearance" is an exclusion or an exemption regardless of its placement in the policy. The language itself clearly terms it an exclusion. We do not believe it would make any legal difference if the term were found under "Perils Excluded."

This court in *Rosenberg v. North Dakota Hospital Service Ass'n,* 136 N.W.2d 128 (N.D.1965), said:

" . . . the burden was on defendant [North Dakota Hospital Service Ass'n] to develop facts bringing the case within the exception or exemption, withdrawing from the operation of the policy that which would otherwise be embraced by it."

The exemption provision in the cited case is comparable or equivalent to the exclusion provision in the instant case.

In *Long, supra,* 215 N.W.2d 274, we find the following statement:

" . . . Defendants rely on the policy provision excluding coverage of loss caused by mysterious disappearance, inventory shortage, or other unaccountable shortage. They overlook the fact an insurer has the burden to prove the applicability of a policy exclusion. *Rich v. Dyna Technology, Inc.,* 204 N.W.2d 867, 871 (Iowa 1973). The insured is not required to negate the exclusion in order to present a prima facie case of theft. *Jewelers Mutual Insurance Company v. Balogh,* 272 F.2d 889 (5 Cir. 1959). Once the insured has offered substantial evidence of theft the burden is on the insurer who asserts the exclusion to prove the loss was caused by an excluded event. 21 Appleman, Insurance Law and Practice, supra, § 12238 at 182; 46 C.J.S. Insurance § 1359 at 561."

■ These provisions have application to the instant case. Lovas is not required to prove that the loss is not the result of mysterious disappearance or straying. It is the responsibility of the insurer to present evidence to establish that the loss was the result of a mysterious disappearance or escaping. This, however, does not imply that any evidence introduced by the insured which also establishes mysterious disappearance or straying may not be used by the trier of facts to make such a finding. We point out, however, that the burden to present evidence in support of an exclusion or exemption rests upon the insurer.

■ Keeping in mind the principles of law applicable to an appellate court in reviewing a judgment notwithstanding the verdict stated earlier herein which apply to this case, and without weighing the evidence or determining its credibility, or questioning the reasonable inferences which may have been drawn therefrom, we cannot reach the conclusion that the evidence compels a result with which no reasonable person might differ, nor can we as a matter of law conclude that the evidence was so inadequate as to preclude the jury from justly reaching its verdict or the inferences upon which the verdict may rest. Thus, viewing the evidence in the light most favorable to the party which was successful before the jury, the verdict must be upheld, and we therefore reverse the judgment notwithstanding the verdict and reinstate the judgment based on the verdict of the jury.

ERICKSTAD, C. J., and VOGEL, PEDERSON and PAULSON, JJ., concur.