On Second Application for Rehearing
The opinion of January 12, 2001, affirming the trial court's judgment is withdrawn, and the following is substituted therefor.
On August 21, 1997, Dr. Henry H. Barnard II sued Delta Air Lines, Inc. ("Delta"), in the District Court of Mobile County, alleging a breach of contract, conversion, theft, negligent supervision, and reckless supervision and/or training. Dr. Barnard sought both compensatory and punitive damages. His claim arose out of the loss of his golf clubs while he was traveling by air from Brunswick, Georgia, to Mobile, Alabama. On December 24, 1997, Delta moved for a summary judgment limiting its potential liability to a maximum of $1,250, pursuant to conditions it alleged had been made a part of its contract of carriage. Dr. Barnard, on February 4, 1998, amended his complaint to add Atlantic Southeast Airlines, Inc. ("ASA"), as a defendant. On February 17, the court granted Delta's motion for a summary judgment, limiting its liability to $1,250. On July 2, 1998, the court entered a judgment in favor of Dr. Barnard for $1,250.
Dr. Barnard appealed to the Circuit Court of Mobile County, on July 8, 1998, for a trial de novo. The case was tried before a jury on March 2, 1999. At trial, Dr. Barnard voluntarily dismissed ASA as a defendant. Delta moved for a judgment as a matter of law ("JML") at the close of Dr. Barnard's case. The court entered a JML in favor of Delta on all the claims except the claims alleging a breach of contract and conversion. Delta renewed its motion for a JML as to those claims at the close of all the evidence. The court denied the motion and submitted the case to the jury. The jury returned a general verdict in favor of Dr. Barnard for $30,000. The court, in accordance with Rule 13(j), Ala.R.Civ.P., reduced the verdict to $10,000, which represents the jurisdictional limits of the district court. Delta appealed to this court, after the circuit court denied its postjudgment motion. This court affirmed the judgment of the trial court, without an opinion, on July 21, 2000. While this case was pending before this court on Delta's application for rehearing, our supreme court released Ex parte Delta Air Lines, Inc., 785 So.2d 327
(Ala. 2000). On October 17, 2000, this court requested the parties to the present appeal to brief the issues in light of the supreme court's opinion in Ex parte Delta Air Lines, Inc. The parties complied with that order.
Dr. Barnard and his wife purchased two Delta round-trip tickets from All Seasons Travel in Dothan, to fly on August 7, 1997, from Mobile to Brunswick, Georgia, with a return trip on August 10, 1997. The return trip required the Barnards to fly through Atlanta.[1] The ticket Dr. Barnard purchased indicated that the return flight would be on Delta flight 7264; however, the Brunswick-to-Atlanta leg of the flight was to be operated by ASA. ASA flights from Brunswick fly only to Atlanta.
On the day of the return trip, Dr. Barnard and his wife arrived at the Brunswick airport between 5:00 p.m. and 5:30 p.m. for their flight, which was scheduled to depart Brunswick at 6:45 p.m. Upon arriving at the airport, Dr. Barnard checked two pieces of luggage to Mobile, and his wife checked her luggage to Dothan. This flight was the last scheduled flight of the day from Brunswick to Atlanta and was *Page 210 
the only flight on which Dr. Barnard's luggage could be placed, because the previous flight had departed Brunswick for Atlanta at 2:45 p.m. Dr. Barnard's luggage consisted of a suitcase that contained clothing, and a hard-plastic carrying case that contained golf clubs and other golf equipment. He testified that each golf club carried a sticker showing his name, address, and telephone number. The clubs were first placed inside a soft carry bag, which had two attached tags bearing Dr. Barnard's name. He testified that the soft bag was then placed inside the hard case. He stated that he had placed a sticker and an identification tag on the hard case. Additionally, Dr. Barnard testified that he had watched the ASA representative affix the baggage seal to the case.
The airport in Brunswick is a small facility. Dr. Barnard testified that he actually watched the ticket agent push the hard-case carrier into the luggage chute that opened directly onto the tarmac. This was the last time Dr. Barnard saw the hard case. He boarded the plane and flew to Atlanta. He had a one-and-one-half hour layover in Atlanta and then flew to Mobile. When Dr. Barnard arrived in Mobile, he proceeded to the baggage-claim area, where he retrieved his suitcase from the baggage carousel. His carrying case containing his golf clubs did not arrive. He then filed a "Lost Bag Claim" with a Delta agent in Mobile and was told that he had been on the day's last flight to Mobile from Atlanta and therefore there was no chance that the carrying case would arrive that night. He was given a telephone number and told to call back the following morning to check the status of his claim.
Dr. Barnard called the following morning and was informed by Delta that the carrying case had not arrived and that Delta was attempting to locate it. He was given Delta's lost-baggage department's toll-free telephone number to follow up on his claim. He called the toll-free number, to no avail. Dr. Barnard testified that two days later he was told by someone at Delta, "[I]f we haven't found [the case] yet, we are not going to find it." He then spoke to a Delta manager, who informed him that after three days "[the case] is probably not going to show up, it's probably gone." The manager informed him that Delta's liability was limited to $1,250 and he offered to send Dr. Barnard a check for that amount. Dr. Barnard testified that the value of the clubs and equipment was $3,292.50. Dr. Barnard received a check for $1,250 two days later, but he returned it to Delta.
Beau Goss, a Delta customer-service agent, testified that Delta's baggage-tracking system is sophisticated. He stated that a "bag tag" containing an identification number, a three-letter abbreviation of the destination, and a bar-code number is attached to a passenger's luggage when it is checked. He said that Delta can track luggage nationwide by the "bag tag" number and the bar code, through its computer system. He also testified that the destination of any luggage is easily ascertainable by looking at the three-letter abbreviation on the "bag tag." Goss further testified that the baggage handling area is a Federal Aviation Administration (FAA) restricted area, accessible by Delta employees with a security clearance. He had no explanation as to how the carrying case containing numerous pieces of identification could get lost on a flight from Brunswick to Mobile with a layover in Atlanta. The record indicates that at no time was Dr. Barnard referred to ASA regarding the missing case.
Ronnie Edwards, an ASA representative, testified that only ASA employees would have access to the baggage-handling *Page 211 
area in Brunswick, and that only ASA and Delta employees would have access to the baggage-handling area in Atlanta. Edwards also had no explanation as to how the carrying case could have been lost during the trip.
Delta argues that the court erred as a matter of law in refusing to enforce its baggage-liability limitation of $1,250, which it alleges was made part of the contract of carriage entered into between Dr. Barnard and Delta. In Ex parte Delta Air Lines, supra, the plaintiff sued Delta in the district court, alleging negligence and a breach of contract. The plaintiff contended that Delta had negligently handled her luggage and that as a result she had suffered damage, including the loss of her family jewelry. The district court entered a judgment in favor of the plaintiff, awarding her damages of $5,000. Delta appealed to the circuit court.
In the circuit court, Delta moved for a summary judgment, contending that the plaintiff's claims were preempted by federal law. The court denied Delta's motion and conducted a bench trial. The plaintiff dismissed her breach-of-contract claim; thereafter, the court entered a judgment in favor of the plaintiff and awarded her damages in the amount of $6,327. Delta appealed to this court; we affirmed the judgment of the trial court, without an opinion, on December 3, 1999.[2] Delta petitioned the supreme court for certiorari review, which the court granted. Id.
The supreme court examined the preemption clause found in the Airline Deregulation Act of 1978, 49 U.S.C.A. § 41713(b)(1) (the "A.D.A."); and American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), and Moralesv. Trans World Airlines, Inc., 504 U.S. 374 (1992), two United States Supreme Court cases addressing the A.D.A preemption clause. In reversing this court's judgment, the supreme court concluded that the preemption clause of the A.D.A. applied and that the plaintiff's state-law negligence claim had been preempted. The court specifically stated, "Reading Morales and Wolens together with the language of the preemption provision, we conclude that a [state-law tort claim] is preempted if it is `related' to an airline's rates, routes, or services and if pursuing the claim in a state court amounts to enforcing a state law." Ex parte DeltaAirlines, 785 So.2d at 334. The court, however, concluded that state-law breach-of-contract claims were not preempted by the preemption clause of the A.D.A. The court stated that "[a]s a result of Morales and Wolens, it is clear that general breach-of-contract claims may be resolved by state courts." Id., at 332.
In reaching its conclusion in Ex parte Delta Airlines, our supreme court noted its holding in Eastern Air Lines v. Williamson, 282 Ala. 421,211 So.2d 912 (1968), a case decided before the adoption of the A.D.A. and the preemption clause; in that case, the court concluded that the plaintiff's claims arising from the destruction of her luggage were to be "`determined by federal law.'" Ex parte Delta Airlines, 785 So.2d at 334, quoting Williamson, 282 Ala. at 425, 211 So.2d at 915. InWilliamson, the plaintiff's luggage was lost when the plane carrying it crashed. The Williamson court noted that Eastern's tariff, which had been filed pursuant to 49 U.S.C.A. § 1373, part of the Federal Aviation Act of 1958, specifically *Page 212 
limited to $250 its liability for the loss of, or damage to, luggage, unless the passenger declared a higher value for the luggage. The terms of the tariff were deemed by law to be incorporated into the contract of carriage, and the court held that Eastern's liability was limited by the terms of the tariff, i.e., to $250 for the lost luggage. Williamson,supra.
The rules applicable to the carriage of baggage in interstate and overseas air transportation are found at 14 C.F.R. § 254. Section 254 sets permissible limitations of air-carrier liability for loss, damage, or delay in the carriage of a passenger's baggage and requires an air carrier to provide certain kinds of notice to passengers regarding its limitation of liability. 14 C.F.R. § 254.4 provides:
 "In any flight segment using large aircraft, or on any flight segment that is included on the same ticket as another flight segment that uses large aircraft, an air carrier shall not limit its liability for provable direct or consequential damages resulting from the disappearance of, damage to, or delay in delivery of a passenger's personal property, including baggage, in its custody to an amount less than $1,250 for each passenger."
Section 254.5 provides:
 "In any flight segment using large aircraft, or on any flight segment that is included on the same ticket as another flight segment that uses large aircraft, an air carrier shall provide to passengers, by conspicuous written material included on or with its ticket, either:
 "(a) Notice of any monetary limitation on its baggage liability to passengers; or
 "(b) The following notice: `Federal rules require any limit on an airline's baggage liability to be at least $1,250 per passenger.'"
The notice requirement that governs the incorporation of terms by reference into a contract of carriage and that makes such incorporation of terms effective is found at 14 C.F.R. § 253. Section 253.1 provides: "The purpose of this rule is to set uniform disclosure requirements, which preempt any State requirements on the same subject, for terms incorporated by reference into contracts of carriage for scheduled service in interstate and overseas passenger air transportation." Section 253.4 provides:
 "(a) A ticket or other written instrument that embodies the contract of carriage may incorporate contract terms by reference (i.e., without stating their full text), and if it does so shall contain or be accompanied by notice to the passenger as required by this part. In addition to other remedies at law, an air carrier may not claim the benefit as against the passenger of, and the passenger shall not be bound by, any contract term incorporated by reference if notice of the term has not been provided to that passenger in accordance with this part.
 "(b) Each air carrier shall make the full text of each term that it incorporates by reference in a contract of carriage available for public inspection at each of its airport and city ticket offices.
 "(c) Each air carrier shall provide free of charge by mail or other delivery service to passengers, upon their request, a copy of the full text of its terms incorporated by reference in the contract. Each carrier shall keep available at all times, free of charge, at all locations where its tickets are sold within the United States information sufficient to enable passengers to order the full text of such terms."
Section 253.5 provides, in part:
 "Except as provided in § 253.8, each air carrier shall include on or with a *Page 213 
ticket, or other written instrument given to a passenger, that embodies the contract of carriage and incorporates terms by reference in that contract, a conspicuous notice that:
 "(a) Any terms incorporated by reference are part of the contract, passengers may inspect the full text of each term incorporated by reference at the carrier's airport or city ticket offices, and passengers have the right, upon request at any location where the carrier's tickets are sold within the United States, to receive free of charge by mail or other delivery service the full text of each such incorporated term.
 "(b) The incorporated terms may include and passengers may obtain from any location where the carrier's tickets are sold within the United States further information concerning:
 "(1) Limits on the air carrier's liability for personal injury or death of passengers, and for loss, damage, or delay of goods and baggage, including fragile or perishable goods. . . ."
As stated previously, Dr. Barnard and his wife had purchased their airline tickets from All Seasons Travel in Dothan. Dr. Barnard's ticket was prepared by Janet Lattime, the branch manager of All Seasons Travel. The back of the airline ticket issued to Dr. Barnard contained the following language:
 "Air transportation to be provided between points in the U.S. (including its overseas territories and possessions) is subject to the individual contract terms (including rules, regulations, tariffs and conditions) of the transporting air carriers, which are herein incorporated by reference and made part of the contract of carriage.[3]
 "Where this coupon is issued for transportation, or services other than air travel, specific terms and conditions may apply. These terms and conditions may be included in the ticket set or may be obtained from this issuing company or agent.
 "Please make sure you have received the important legal notices entitled `Conditions of Contract', `Notice of Incorporated Terms', `Notice of Baggage Liability Limitations', and `Notice of Overbooking', or the specific terms and conditions relating to non-air transportation or services. If not, contact the nearest office of the company or agent to obtain copies."
Dr. Barnard testified that he never read the wording on the back of the ticket and did not obtain the legal notices referenced therein.
Lattime testified that a two-page insert had accompanied Dr. Barnard's ticket when it was issued to him. Page one of the insert contained the following language:
"NOTICE OF BAGGAGE LIABILITY LIMITATIONS
 "Liability for loss, delay, or damage to baggage is limited unless a higher value is declared in advance and additional charges are paid. . . . For travel wholly between U.S. points federal rules require any limit on an airline's baggage liability to be at least $1,250 per passenger. Excess valuation may be declared on certain types of articles. Some carriers assume no liability for fragile, valuable or perishable articles. Further information *Page 214 
may be obtained from the carrier."
Page two of the insert contained the following language:
"NOTICE OF INCORPORATED TERMS
 "Effective January 1, 1983, this notice forms part of the conditions of contract between the airline and the passenger. If there is any inconsistency between the incorporated terms described below and the terms and conditions in the passenger's ticket, these incorporated terms govern.
 "Air transportation to be provided between points in the U.S. (including its overseas territories and possessions) is subject to the individual terms of the transporting air carriers, which are herein incorporated by reference and made part of the contract of carriage. . . . Incorporated terms may include, but are not restricted to:
". . . .
 "2. Limits on liability for baggage, including fragile or perishable goods, and availability of excess valuation coverage.
". . . .
 "You can obtain additional information on items 1 through 6 above at any U.S. location where the transporting air carrier's tickets are sold.
 "You have the right to inspect the full text of each transporting air carrier's terms at its airport and city ticket offices. You also have the right upon request, to receive free of charge the full text of the applicable terms incorporated by reference from each of the transporting air carriers. Information on ordering the full text of each air carrier's terms is available at any U.S. location where the air carrier's tickets are sold."
Lattime testified that attached to every airline ticket issued by All Seasons is a copy of the above-mentioned insert, and she testified that she specifically recalls including the insert in the ticket packet issued to Dr. Barnard. Dr. Barnard testified that he did not recall seeing the insert in the ticket packet, but that he did not look at all of the information contained in the packet. He did state that it was possible that he had seen the insert before August 10, 1997. Additionally, Dr. Barnard stated that he had flown commercially approximately 30 to 40 times and that he was generally aware that airlines contractually limit their liability for passenger baggage.
Based on our supreme court's holding in Ex parte Delta Airlines,supra, we conclude that Dr. Barnard's conversion claim in this case relates to an airline's service and therefore must be determined in accordance with federal law. We further note that Delta conceded at trial that a contract of carriage existed between the parties and that it had breached that contract; however, it argued that its liability was limited to $1,250, because, it contended, it had satisfied the notice requirements contained in 14 C.F.R. § 253 and 254. Following the denial of its motion for a JML on Dr. Barnard's conversion claim, Delta argued that the limitation of liability also applied to any compensatory damages that Dr. Barnard might recover under his conversion claim for the loss of the case containing the golf clubs. The trial court gave Delta's requested jury charge regarding the limitation of liability and instructed the jury that if it found that Delta had properly delivered notice of the limitation of liability to Dr. Barnard, then the amount of compensatory damages under either the conversion claim or the breach-of-contract claim, was limited to $1,250. We conclude, from *Page 215 
the evidence presented, that Delta complied with the notice requirements set forth in 14 C.F.R. § 253 and 254 and it was entitled, as a matter of law, to have its $1,250 limitation of liability enforced.
Accordingly, the judgment of the trial court is reversed. On remand, the court is directed to enter a judgment in favor of Dr. Barnard for $1,250.
SECOND APPLICATION FOR REHEARING GRANTED; OPINION OF JANUARY 12, 2001, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
Crawley, Thompson, and Pittman, JJ., concur.
Murdock, J., concurs in the result.
[1] Dr. Barnard's wife was scheduled to fly from Atlanta to the parties' home in Dothan. Dr. Barnard was scheduled to continue on to Mobile, where he was to perform surgery the following day.
[2] Delta Air Lines, Inc. v. Decoff (No. 2981206), 789 So.2d 255
(Ala.Civ.App. 1999) (table).
[3] Delta introduced into evidence a copy of its conditions of contract that are incorporated by reference into the terms of the contract of carriage. Section V pertains to baggage and contains language limiting to $1,250 Delta's liability for the loss of, or damage to, a passenger's baggage, unless a higher value is declared by the passenger. *Page 931