## CIRCUIT COURT OF THE CITY OF NORFOLK

Ann Hughes

v.

Nationwide Mutual
Fire Ins. Co.

Case No. (Law) L00-1272

By Judge Marc Jacobson

August 8, 2001

In the instant action, Ann Hughes and Nationwide Mutual Fire Insurance Company have stipulated that Plaintiff was traveling by airplane from the City of Norfolk to Palm Beach, Florida, on July 25, 1998. *See* Defendant's Letter Dated February 22, 2001, (Defendant's Letter), at 1. On that date, Plaintiff checked in at the Delta Airlines counter at the Norfolk Airport with her daughter, where both women checked one piece of luggage each and received sequentially numbered claim receipts for the bags. *See id.* When the women's flight arrived in Florida, neither bag arrived with the flight. *See id.* Plaintiff's daughter's bag arrived on a subsequent flight, but to date, Plaintiff's bag has not been located or found. *See id.*

As a result of the loss, Plaintiff has initiated suit against Defendant under the homeowner's insurance policy issued by Defendant in favor of Plaintiff that was in effect at the time of the loss (Policy). Plaintiff has sued for the value of the bag and its contents, claiming that the loss was covered because the Policy insured Plaintiff's loss against "theft, including attempted theft" as well as "[l]oss of property from a known location when it is likely the property was stolen." *See* Policy at 7. The parties have stipulated to the estimated value of the bag and its contents, and the sole issue remaining to be decided at this juncture is whether Plaintiff can recover for the loss of the bag under the aforementioned theft provisions of the Policy. Plaintiff contends that the circumstances under which her bag disappeared indicate the probability of

theft, or, at the very least indicated the "loss of property from a known location when it is likely the property was stolen" and she is therefore covered for the loss. Defendant contends that the circumstances indicate a mere "disappearance" of the luggage, a circumstance of loss for which Plaintiff has no coverage by Defendant. The parties agree that the policy contains no inclusion nor exclusion of coverage for a "mysterious disappearance" as is found in many insurance contracts.

Counsel for both parties have orally argued their respective positions before the Court and have submitted authority to the Court in support of their respective positions. Counsel for both parties have examined and submitted only one and the same authority to this Court, the case of *Travelers Indemnity Co. v. Universal Time, Inc.*, 430 So. 2d 987 (Fla. App. 3 Dist. 1983), in which case an appellate court in Florida ruled that a litigant in circumstances somewhat like Plaintiff's could not recover under a similar contract. The court noted that "[i]t simply cannot be said that an airline's mere nondelivery of a checked piece of luggage, without more, may more rationally be attributed to its having been stolen rather than lost or mislaid." *See id.* The Florida court, in making this determination, examined a North Carolina case in which a plaintiff sought to recover under a similar provision for a missing piece of jewelry. *See Adler v. Lumber Mutual Fire Ins. Co.*, 280 N.C. 146, 185 S.E.2d 144 (1971). In that case, the court noted that the evidence indicated plaintiff last saw the jewelry on her nightstand and that there was no other indication of what ultimately happened to the item. *See id.* The court held that the plaintiff had offered no evidence to show the likelihood of theft, and, therefore, the loss was not covered by the policy. *See id.*

Although the parties suggest that there is no direct precedential case law on this issue, it appears that cases from other jurisdictions do address the issue. For example, in *Manopla v. Travelers Ins. Co.*, 525 N.Y.S.2d 997, 139 Misc. 2d 30 (1988), the New York City Civil Court examined a claim very similar to Plaintiff's. There, the plaintiff had failed to recover his luggage from a flight from New York to Mexico City and sued his homeowner's insurance company for the loss. The applicable provision allowed coverage for "lost property when the probability of theft exists." *See id.* The court noted "Plaintiff is not required to produce evidence to show that the property was, in fact, stolen but rather, proof to show that the loss was more likely than not caused by theft." *See id.* Plaintiff offered at trial a letter from the Mexican Airline stating that since the luggage had not been found within six months, it was most likely stolen. The court ruled that this declaration was sufficient to prove that the luggage was probably stolen, even though no other evidence of theft was ever adduced.

In the case of *Watkins v. Nationwide Mutual Fire Ins. Co.*, 113 Ga. App. 801, 149 S.E.2d 749 (1966), the Georgia Court of Appeals examined a case where the plaintiff sued her homeowner's insurance carrier to recover for lost items from her suitcases. There, the plaintiff was staying in a hotel in Turkey when she packed her suitcase for a flight to Rome. She checked her bags with the airline, and when she arrived at her destination, the jewelry packed in her suitcase was missing. There was no evidence to suggest what happened to the jewelry, only that her suitcases were left unattended both during the plaintiff's breakfast in Turkey and while on the plane to Rome. In order to recover, the plaintiff had to show under her policy that the jewelry had been lost during the commission of the burglary of her hotel room in Turkey. In reversing the lower court's grant of summary judgment to the defendant, the court held that although the petition contained alleged facts suggesting both burglary and a disappearance other than by burglary, the question of what happened to the jewelry was ultimately a fact for the jury. *See id.*

In *Delta Air Lines, Inc. v. Barnard II*, 2001 Ala. Civ. App. LEXIS 185 (Ala. Civ. App. May 4, 2001), an appellate court in Alabama examined the plaintiff's claim for the loss of his golf clubs when traveling by air. The plaintiff sued the airline for conversion and breach of the parties' contract of carriage, and he recovered a judgment at trial. *See id.* Although the judgment was later reversed and remanded on preemption grounds,[1] *Barnard* is illustrative in that its facts are quite similar to those of the instant case. The plaintiff checked his luggage at the Brunswick, Georgia, airport for his flight to Mobile, Alabama. His golf clubs were stored in a hard-plastic carrying case, and each club bore a sticker showing his name, address, and telephone number. A sticker and an identification tag were also placed on the hard case. Like Ms. Hughes, Barnard "actually watched the ticket agent push the hard-case carrier into the luggage chute that opened directly onto the tarmac." *Id.* at *5. When Barnard arrived at the Mobile airport, he went to retrieve his luggage. Upon discovering that the case containing his golf clubs had not arrived, he immediately filed a "Lost Bag Claim." *Id.*

---

[1] The Court held that Plaintiff's conversion claim was preempted under 49 U.S.C. § 41713(b)(1) of the Airline Deregulation Act of 1978, and therefore, it must be determined under federal law. The Court also determined that Plaintiff's contract claim could be pursued in state court, subject to the liability limitations of 14 C.F.R. § 254. Although Delta conceded breaching the parties' contract of carriage, the Court concluded that it had complied with the notice provisions of 14 C.F.R. §§ 253 and 254. The matter was reversed and remanded with directions to enter a judgment in favor of Plaintiff for $1,250.00.

In *Barnard II*, Delta's system for storing and tracking passengers' luggage is very similar to that in the instant case. A representative of Atlantic Southeast Airlines, Inc., (ASA) which operated the first leg of Barnard's flight, testified that "only ASA employees would have access to the baggage-handling area in Brunswick and that only ASA and Delta employees would have access to the baggage handling area in Atlanta." *Id.* at *7. The ASA representative "had no explanation as to how the carrying case could have been lost during the trip." *Id.* Additionally, a Delta customer-service agent testified that "Delta's baggage-tracking system is sophisticated. . . . Delta can track luggage nationwide by the 'bag tag' number and the bar code, through its computer system." *Id.* at *6. The Delta agent also testified that "[t]he baggage handling area is a Federal Aviation Administration (FAA) restricted area, accessible by Delta employees with a security clearance." *Id.* at *6-7. Further, "[h]e had no explanation as to how the carrying case containing numerous pieces of identification could get lost on a flight from Brunswick to Mobile with a layover in Atlanta." *Id.* at *7.

*Barnard II* reversed *Delta Air Lines v. Barnard*, 2001 Ala. Civ. App. LEXIS 26 (Ala. Civ. App. Jan. 12, 2001), basically for the reason set forth in footnote 1. The following language in the first *Barnard* case, which relates to the factual issues, although not relied upon, is instructive:

> The evidence, viewed in a light most favorable to [plaintiff], indicates that he properly checked his carrying case with the ASA ticket agent at the Brunswick airport for the flight to Atlanta . . . the case contained numerous pieces of identification. [Plaintiff] watched as the ASA agent placed the case on the luggage chute, which opened onto the tarmac. Once the case was checked in Brunswick, it was in the exclusive control of ASA and Delta, and only ASA and Delta employees had access to it, because the baggage-handling areas are FAA-restricted areas accessible only by those with a security clearance. [Plaintiff] had a layover in Atlanta before flying to Mobile. His other luggage arrived in Mobile, but the case did not. Delta has a sophisticated luggage-tracking system; however, it has been unable to locate the case. We conclude that [plaintiff] presented substantial evidence from which a jury could infer that an ASA employee wrongfully took or detained [plaintiff's] carrying case containing his golf clubs.

*See id.*

Cases involving insurance contract interpretation and the disappearance of other items also merit consideration. In *Lovas v. St. Paul Ins. Co.*, 240 N.W.2d 53 (N.D. 1976), the Supreme Court of North Dakota examined a case wherein livestock turned up missing from a pen. The plaintiff was covered for loss due to theft, but could not recover for a "mysterious disappearance." The court allowed recovery, even in the absence of direct evidence of theft. The court noted that the pigs were properly maintained in a securely fenced feed lot, no holes appeared in the fence, no open gates were discovered, and the pigs were unlikely to leave the area. Additionally, no tire tracks or strange activity were seen around the area, no evidence existed of fences being cut or gates being disturbed, and no evidence existed that any strange person was near the pens. The court sustained the jury verdict, noting that it could not determine as a matter of law that the hogs were not stolen and that the ultimate determination rightly rested with the trier of fact. *See id.*

The Fourth Circuit's interpretation of the meaning of "theft" and "mysterious disappearance" clauses in insurance contracts helps to illuminate the issues in the instant case. In *Betty v. Liverpool and London and Globe Ins. Co.*, 310 F.2d 308 (4th Cir. 1962), the court examined a case in which an insured discovered lost property upon an inventory of his tire business. No other circumstances existed suggesting the theft of the tires, and the court characterized the deficiency as an "unexplained loss." *Id.* at 309. In determining whether this incident was likely due to theft or was a mysterious disappearance, the court stated "it is not difficult to understand the meaning of the phrase 'unexplained loss or mysterious disappearance' as contradistinguished from theft. We would simply interpret it to mean a loss, the surrounding circumstances of which excluded the probability of theft." *Id.* at 311. The court went on to say that in the case where a "mysterious disappearance" clause is an exclusion in an all-risk policy, "we think it means a disappearance of property where the surrounding circumstances offer no logical explanation of what happened to it. The definition, of course excludes the probability of theft and it would also exclude the probability of all of the other perils against which the policy insured." *Id.*

According to her insurance policy, Plaintiff must show that her bag was lost from a known location and that the property was "likely stolen" in order to recover. The parties have agreed that Plaintiff's bag was in the sole custody and control of Delta Airlines, that Plaintiff saw the bag being checked in, and that Delta made a search for the bag using its computerized system. Additionally, testimony was taken from a Delta Airlines Claims Center manager, Randy Tiemann, who testified about the computerized system Delta uses to track missing luggage. As in *Barnard II*, Tiemann testified that Delta's

system for tracking luggage is an electronic tracing system. *See* Deposition Transcript of Randy Tiemann (Transcript), p. 8, ll. 9-10. Tiemann testified that the system is "the world's leading computerized service for lost and mishandled baggage," and that it "is used by over 300 of the world's largest airlines." *See* Transcript, p. 8., ll. 12-15. He also testified that during the first five days a piece of luggage is missing, the system operates independently to locate the luggage. *See* Transcript, p. 8, ll. 21-25. After that, the report on the luggage is sent to the claims headquarters, and a more detailed search is conducted. *See* Transcript, p. 9, ll. 1-2.

Unclaimed luggage is stored in one central location in Atlanta, where it can be examined and searched by hand. *See* Transcript, p. 9, ll. 16-20. The system searches for the luggage for ninety days, *see* Transcript, p. 12, l. 9, and Delta typically pays claims on luggage after it has been missing for three weeks, *see* Transcript, p. 12, ll. 5-7. Tiemann also testified that about 95 percent of lost luggage is returned to the passenger within 24 hours, that Delta checks about 90 million bags a year, and pays loss claims on less than one-half of one percent of those bags. *See* Transcript, p. 14, ll. 14-23. Tiemann also testified that when a passenger's bag misses a connecting flight, it remains in a "holding area" until it can be put on the next flight to the appropriate airport. *See* Transcript, p. 15, ll. 17-21. At times, the bag is accessible by anyone on the tarmac, including fuel and food service employees. *See* Transcript, p. 17, ll. 7-21.

In this case, the parties agreed to much of the same evidence as that at issue in *Barnard II*. Plaintiff checked her bag at the counter, tagged it with the appropriate identification, and watched as the bag was sent through inside the airport. Plaintiff immediately filed a police report at her final destination and has made appropriate inquiries to the airline. Delta has used its computerized system of tracking luggage to find the bag, even checking its warehouse storage of lost luggage, all to no avail. The parties agree that the bag contained several valuable items, including a laptop computer, and that the bag and its contents were worth over eight thousand dollars. Additionally, although Plaintiff's more expensive bag did not reach its final destination, Plaintiff's daughter's less expensive duffel bag arrived in Florida shortly after the flight. Plaintiff's bag was marked with her identification, and Plaintiff promptly took appropriate steps in order to track down the whereabouts of the luggage, to no avail.

All of these circumstances, combined with the testimony indicating the sophistication and detail of Delta's luggage system, operate to suggest that the luggage did not mysteriously disappear, but was more than likely stolen. Large, expensive items do not logically disappear into thin air without any

explanation as to what happened; rather, large, expensive items are more likely stolen. *See Libralter Plastics, Inc. v. Chubb Group of Ins. Cos.*, 199 Mich. App. 482, 502 N.W.2d 742 (1993) (holding that an item's size, high value, and location are evidence of theft which renders summary judgment for an insurer improper under a theft policy provision).

Once the bag passed through the counter, it entered an area unseen by airline passengers, under the control of the airline, where a would-be thief may easily escape detection. As in *Barnard II*, once Plaintiff's bag was checked in, it was held in an area accessible only by airline employees. The Court concludes that Plaintiff has proven by a preponderance of the evidence that her bag was lost "from a known location when it was likely the property was stolen."

Counsel for Plaintiff will prepare an Order entering judgment for Plaintiff.

October 18, 2001

The Court previously issued a Letter Opinion dated August 8, 2001. Thereafter, counsel for Nationwide Mutual Fire Insurance Company requested that the matter be reconsidered, and a hearing was held on October 5, 2001.

In the instant action, Ann Hughes and Defendant have stipulated that Plaintiff was traveling by airplane from the City of Norfolk to Palm Beach, Florida, on July 25, 1998. Defendant's Letter Dated February 22, 2001 (Def.'s Letter), at 1. On that date, Plaintiff checked in at the Delta Airlines counter at the Norfolk Airport with her daughter, where both women checked one piece of luggage each and received sequentially numbered claim receipts for the bags. When the women's flight arrived in Florida, neither bag arrived with the flight. Plaintiff's daughter's bag arrived on a subsequent flight, but to date Plaintiff's bag has not been located or found. *Id.*

As a result of the loss, Plaintiff initiated suit against Defendant under the homeowner's insurance policy issued by Defendant in favor of Plaintiff in effect at the time of the loss. Plaintiff has sued for the value of the bag and its contents, claiming that the loss was covered because the Policy insured Plaintiff's loss against "theft, including attempted theft" as well as "[l]oss of property from a known location when it is likely the property was stolen." Policy at 7. The parties have stipulated to the estimated value of the bag and its contents, and the sole issue remaining to be decided at this juncture is whether Plaintiff can recover for the loss of the bag under the aforementioned theft provisions of the Policy.

Plaintiff contends that the circumstances under which her bag disappeared indicate the probability of theft, or, at the very least indicated the "loss of

property from a known location when it is likely the property was stolen" and that she is therefore covered for the loss. Defendant contends that the circumstances indicate a mere "disappearance" of the luggage, a circumstance of loss for which Plaintiff has no coverage by Defendant. The parties agree that the policy contains no inclusion nor exclusion of coverage for a "mysterious disappearance" as is found in many insurance contracts.

Counsel for both parties have orally argued their respective positions before the Court and have submitted memoranda or briefs to the Court in support of their respective positions. Counsel for both parties have examined and submitted only one and the same authority to this Court, the case of *Travelers Indemnity Co. v. Universal Time, Inc.*, 430 So. 2d 987 (Fla. App. 3 Dist. 1983), in which case, an appellate court in Florida ruled that a litigant in circumstances somewhat like Plaintiff's could not recover under a similar contract. The court noted that "[i]t simply cannot be said that an airline's mere nondelivery of a checked piece of luggage, without more, may more rationally be attributed to its having been stolen rather than lost or mislaid." *Id.* The Florida court, in making this determination, examined a North Carolina case in which a plaintiff sought to recover under a similar provision for a missing piece of jewelry. *Adler v. Lumber Mutual Fire Ins. Co.*, 280 N.C. 146, 185 S.E.2d 144 (1971). In that case, the court noted that the evidence indicated plaintiff last saw the jewelry on her nightstand and that there was no other indication of what ultimately happened to the item. The court held that the plaintiff had offered no evidence to show the likelihood of theft and, therefore, the loss was not covered by the policy. *Id.*

Although the parties suggest that there is no direct precedential case law on this issue, it appears that cases from other jurisdictions at least do address the issue. For example, in *Manopla v. Travelers Ins. Co.*, 525 N.Y.S.2d 997, 139 Misc. 2d 30 (1988), the New York City Civil Court examined a claim similar to Plaintiff's. There, the plaintiff had failed to recover his luggage from a flight from New York to Mexico City and sued his homeowner's insurance company for the loss. The applicable provision allowed coverage for "lost property when the probability of theft exists." *Id.* The court noted "Plaintiff is not required to produce evidence to show that the property was, in fact, stolen but rather, proof to show that the loss was more likely than not caused by theft." *Id.* Plaintiff offered at trial a letter from the Mexican Airline stating that since the luggage had not been found within six months, it was most likely stolen. The court ruled that this declaration was sufficient to prove that the luggage was probably stolen, even though no other evidence of theft was ever adduced.

In the case of *Watkins v. Nationwide Mutual Fire Ins. Co.*, 113 Ga. App. 801, 149 S.E.2d 749 (1966), the Georgia Court of Appeals examined a case where the plaintiff sued her homeowner's insurance carrier to recover for lost items from her suitcases. There, the plaintiff was staying in a hotel in Turkey when she packed her suitcase for a flight to Rome. She checked her bags with the airline, and, when she arrived at her destination, the jewelry packed in her suitcase was missing. There was no evidence to suggest what happened to the jewelry, only that her suitcases were left unattended both during the plaintiff's breakfast in Turkey and while on the plane to Rome. In order to recover, the plaintiff had to show under her policy that the jewelry had been lost during the commission of the burglary of her hotel room in Turkey. In reversing the lower court's grant of summary judgment to the defendant, the court held that although the petition contained alleged facts suggesting both burglary and a disappearance other than by burglary, the question of what happened to the jewelry was ultimately a fact for the jury. *Id.*

In *Delta Air Lines, Inc. v. Barnard*, 2001 Ala. Civ. App. LEXIS 185 (Ala. Civ. App. May 4, 2001), hereinafter referred to by this Court as *Barnard II*, an Alabama appellate court examined the plaintiff's claim for the loss of his golf clubs when traveling by air. The plaintiff sued the airline for conversion and breach of the parties' contract of carriage, and he recovered a judgment at trial. Although the judgment was reversed and remanded on preemption grounds,[2] *Barnard II* is illustrative in that its facts are quite similar to those of the instant case. The plaintiff checked his luggage at the Brunswick, Georgia, airport for his flight to Mobile, Alabama. His golf clubs were stored in a hard-plastic carrying case, and each club bore a sticker showing his name, address, and telephone number. A sticker and an identification tag were also placed on the hard case. Like Ms. Hughes, Barnard "actually watched the ticket agent push the hard-case carrier into the luggage chute that opened directly onto the tarmac." *Id.* at *5. When Barnard arrived at the Mobile airport, he went to retrieve his luggage. Upon discovering that the case containing his golf clubs had not arrived, he immediately filed a "Lost Bag Claim." *Id.*

---

[2]  The Court held that Plaintiff's conversion claim was preempted under 49 U.S.C. § 41713(b)(1) of the Airline Deregulation Act of 1978 and, therefore, it must be determined under federal law. The Court also determined that Plaintiff's contract claim could be pursued in state court, subject to the liability limitations of 14 C.F.R. § 254. Although Delta conceded breaching the parties' contract of carriage, the Court concluded that it had complied with the notice provisions of 14 C.F.R. §§ 253 and 254. The matter was reversed and remanded with directions to enter a judgment in favor of Plaintiff for $1,250.00.

In *Barnard II*, Delta's system for storing and tracking passengers' luggage was similar to that in the instant case. A representative of Atlantic Southeast Airlines, Inc., (ASA) which operated the first leg of Bernard's flight, testified that "only ASA employees would have access to the baggage-handling area in Brunswick and that only ASA and Delta employees would have access to the baggage-handling area in Atlanta." *Id.* at *7. The ASA representative "had no explanation as to how the carrying case could have been lost during the trip." *Id.* Additionally, a Delta customer-service agent testified that "Delta's baggage-tracking system is sophisticated . . . Delta can track luggage nationwide by the 'bag tag' number and the bar code, through its computer system." *Id.* at *6. The Delta agent also testified that "[t]he baggage handling area is a Federal Aviation Administration (FAA) restricted area, accessible by Delta employees with a security clearance." *Id.* at *6-7. Further, "[h]e had no explanation as to how the carrying case containing numerous pieces of identification could get lost on a flight from Brunswick to Mobile with a layover in Atlanta." *Id.* at *7.

*Barnard II* reversed *Delta Air Lines v. Barnard*, 2001 Ala. Civ. App. LEXIS 26 (Ala. Civ. App. Jan. 12, 2001), basically for the reason set forth below. The following language in the first *Barnard* case, which relates to the factual issues, although not relied upon, is instructive:

> The evidence, viewed in a light most favorable to [plaintiff], indicates that he properly checked his carrying case with the ASA ticket agent at the Brunswick airport for the flight to Atlanta . . . the case contained numerous pieces of identification. [Plaintiff] watched as the ASA agent placed the case on the luggage chute, which opened onto the tarmac. Once the case was checked in Brunswick, it was in the exclusive control of ASA and Delta, and only ASA and Delta employees had access to it, because the baggage-handling areas are FAA-restricted areas accessible only by those with a security clearance. [Plaintiff] had a layover in Atlanta before flying to Mobile. His other luggage arrived in Mobile, but the case did not. Delta has a sophisticated luggage-tracking system, however, it has been unable to locate the case. We conclude that [plaintiff] presented substantial evidence from which a jury could infer that an ASA employee wrongfully took or detained [plaintiff's] carrying case containing his golf clubs.

*See id.*

.

Cases involving insurance contract interpretation and the disappearance of other items also merit consideration. In *Lovas v. St. Paul Ins. Co.*, 240 N.W.2d 53 (N.D. 1976), the Supreme Court of North Dakota examined a case wherein livestock turned up missing from a pen. The plaintiff was covered for loss due to theft, but could not recover for a "mysterious disappearance." The court allowed recovery, even in the absence of direct evidence of theft. The court noted that the pigs were properly maintained in a securely fenced feed lot, no holes appeared in the fence, no open gates were discovered, and the pigs were unlikely to leave the area. Additionally, no tire tracks or strange activity were seen around the area, no evidence existed of fences being cut or gates being disturbed, and no evidence existed that any strange person was near the pens. The court sustained the jury verdict, noting that it could not determine as a matter of law that the hogs were not stolen and that the ultimate determination rightly rested with the trier of fact. *Id.*

The United States Fourth Circuit Court's interpretation of the meaning of "theft" and "mysterious disappearance" clauses in insurance contracts helps to illuminate the issues in the instant case. In *Betty v. Liverpool and London and Globe Ins. Co.*, 310 F.2d 308 (4th Cir. 1962), the court examined a case in which an insured discovered lost property upon an inventory of his tire business. No other circumstances existed suggesting the theft of the tires, and the court characterized the deficiency as an "unexplained loss." *Id.* at 309. In determining whether this incident was likely due to theft or was a mysterious disappearance, the court stated . . . it is not difficult to understand the meaning of the phrase "unexplained loss or mysterious disappearance" as contradistinguished from theft. We would simply interpret it to mean a loss, the surrounding circumstances of which excluded the probability of theft." *Id.* at 311. The court went on to say that in the case where a "mysterious disappearance" clause is an exclusion in an all-risk policy, "we think it means a disappearance of property where the surrounding circumstances offer no logical explanation of what happened to it. The definition, of course excludes the probability of theft and it would also exclude the probability of all of the other perils against which the policy insured." *Id.*

According to her insurance policy, Plaintiff must show that her bag was lost from a known location and that the property was "likely stolen" in order to recover. It is not in dispute that Plaintiff checked her luggage in Norfolk, with an agent of Delta at a Delta ticket counter, for a Delta Airlines flight, and she never saw it again. Transcript of Proceedings before the Honorable Marc Jacobson, Feb. 5, 2001, p. 4, ll. 14-15, 25, p. 5, ll. 1-2, p. 22, ll. 12-13. After Plaintiff checked in her bag, it was placed on a conveyer belt and disappeared into the rear of the airport. *Id.*, p. 7, ll. 7-15. Plaintiff, her attorney, Defendant,

and the Atlanta Police have all inquired of and to Delta to attempt to find the luggage. *Id.*, p. 19, ll. 24-25. There is also evidence that Delta searched for the bag using its computerized system. Deposition Transcript of Randy Tiemann (Dep. Transcript), p. 12, ll. 1-8. The above-referenced agreed-upon facts, combined with evidence that Delta searched for Plaintiff's bag, lead to the inference that the bag was in the sole custody and control of Delta Airlines.

Additionally, testimony was taken from a Delta Airlines Claims Center manager, Randy Tiemann, who testified about the computerized system Delta uses to track missing luggage. As in *Barnard II*, there is testimony that Delta's system for tracking luggage is an electronic tracing system. Dep. Transcript, p. 8, ll. 9-10. Tiemann testified that the system is "the world's leading computerized service for lost and mishandled baggage," and that it "is used by over 300 of the world's largest airlines." *Id.*, p. 8., ll. 12-15. He also testified that during the first five days a piece of luggage is missing, the system operates independently to locate the luggage. *Id.*, p. 8, ll. 21-25. After that, the report on the luggage is sent to the claims headquarters, and a more detailed search is conducted. *Id.*, p. 9, ll. 1-2.

Unclaimed luggage from Delta flights is stored in one central location in Atlanta, where it can be examined and searched by hand. *Id.*, p. 9, ll. 16-20. The system searches for the luggage for ninety days, *id.*, p. 12, l. 9, and Delta typically pays claims on luggage after it has been missing for three weeks. *Id.*, p. 12, ll. 5-7. Tiemann also testified that about 95 percent of lost luggage is returned to the passenger within 24 hours, that Delta checks approximately 90 million bags a year. *Id.*, p. 14, ll. 14-23. Tiemann also testified that when a passenger's bag misses a connecting flight, it remains in a "holding area" until it can be put on the next flight to the appropriate airport. *Id.*, p. 15, ll. 17-21. At times, the bag is accessible by anyone on the tarmac, including fuel and food service employees. *Id.*, p. 17, ll. 7-21.

In this case, the parties agreed to much of the same evidence as that at issue in *Barnard II*. Plaintiff checked her bag at the counter, tagged it with the appropriate identification, and watched as the bag was sent through a conveyer to an interior place inside the airport. Plaintiff immediately filed a police report at her final destination relative to the loss and has made appropriate inquiries to the airline. Delta has used its computerized system of tracking luggage to find the bag, even checking its warehouse storage of lost luggage, all to no avail. The parties agree that the bag contained several valuable items, including a laptop computer, and that the bag and its contents were worth over $8,000.00. Additionally, although Plaintiff's more expensive bag did not reach its final destination; Plaintiff's daughter's less expensive duffel bag arrived in Florida shortly after the flight. Plaintiff's bag was marked with her

identification, and Plaintiff promptly took appropriate steps in order to track down the whereabouts of the luggage, to no avail.

All of these circumstances, combined with the testimony indicating the sophistication and detail of Delta's luggage system operate to suggest that the luggage did not mysteriously disappear, but was more than likely stolen. Large, expensive items do not logically disappear into thin air without any explanation as to what happened. *See Libralter Plastics, Inc. v. Chubb Group of Ins. Cos.*, 199 Mich. App. 482, 502 N.W.2d 742 (1993) (holding that an item's size, high value, and location are evidence of theft which renders summary judgment for an insurer improper under a theft policy provision).

Once the bag passed through the Delta ticket counter in Norfolk, it entered an area unseen by airline passengers, under the control of the airline. As in *Barnard II*, once Plaintiff's bag was checked in, it was held in an area accessible only by authorized personnel. Plaintiff has shown that her bag was likely stolen from Delta Airline's baggage handling system. Therefore, the Court concludes that Plaintiff has proved by a preponderance of the evidence that her bag was lost "from a known location when it was likely the property was stolen." As such, the policy covers Plaintiff for her loss.